[No. 1554.]

## G. ALONZO v. THE STATE.

1. ADULTERY—PLEADING—PRACTICE.—To a prosecution for adultery the defendant pleaded in bar the acquittal of his co-defendant, setting up that, as the offense is one which could only be committed by two persons, the acquittal of one operated as an acquittal of both. *Held,* that the position is untenable; that the plea was properly overruled, and that under our system but two special pleas are available in criminal cases; *i. e.,* former conviction and former acquittal by a jury, upon a sufficient indictment before a court of competent jurisdiction. See the opinion *in extenso* upon the question.

2. SAME—EVIDENCE.—The husband of the defendant's paramour was a competent witness against the former in a prosecution for adultery with the wife.

3. SAME—CHARGE OF THE COURT.—Having omitted to charge upon the doctrines of reasonable doubt and the presumption of innocence, the trial court erred in refusing instructions requested thereupon.

4. SAME.—That "circumstantial evidence is often as strong and conclusive upon the understanding as direct and positive evidence" is a charge upon the weight of evidence, and consequently error.

· APPEAL from the County Court of Webb. Tried below before the Hon. J. M. Rodriguez, County Judge.

The indictment in this case was joint against the appellant and Lydia Huberick, charging that the appellant, an unmarried male, and the said Lydia, a married female, committed the crime of adultery together, in the county of Webb. A severance was had, and the said Lydia was first placed upon trial. She was acquitted by the jury, and this defendant was thereupon arraigned, and his plea that the acquittal of his co-defendant operated as an acquittal of himself being overruled, his trial was proceeded with, and resulted in his conviction, his punishment being affixed at a fine of one thousand dollars.

Paul Huberick testified, for the State, that Lydia Huberick, the defendant's alleged paramour, was his, the witness's wife. He married her in 1872, in San Antonio, and brought her with him to Laredo, in 1882. On or about the seventeenth of December, 1883, witness was living at the house of Mr. Shea, and Lydia Huberick at the house of John Brune. Witness and the said Lydia were not then living together, and had not been living together since about February 20, 1883. Until this latter date, witness and his wife occupied a house belonging to Judge Rodriguez on the main plaza. Witness quit his wife because she practiced adultery with the defendant. He never detected the two in the physical act of adultery, but he knew them to be guilty of the practice, because he frequently saw them in conversation at Brune's store. Witness saw them conducting these conversations before he separated from his wife, and after he had forbidden her speaking to defendant. Thereupon witness left her, leaving her all of his furniture, for which she never paid him. Witness did not know that she had any money when he quit her. He gave her none. Witness locked his wife out of his house all of one night on one occasion. He did so because he had forbidden her staying out later than five o'clock p. m., and on that occasion she remained out until seven o'clock p. m. Witness asked her next morning where she passed the night, and she replied that she passed it at Mrs. Arfila's, which witness afterward discovered was untrue.

John Brune was the next witness, for the State. He testified that he lived in a two story house at the corner of Market Plaza in Laredo. Mr. Alonzo, the defendant, lived there for about four months, but left about the twenty-fifth of July, 1883. Other

parties, including witness and wife and Mr. Bonouli and wife, lived there at the same time. When defendant first came to the house he rented one up stairs room from the witness, and subsequently rented two more rooms adjoining the first. These rooms were divided one from another by plank partitions. On renting the last two rooms he requested permission to remove parts of the plank partitions. The witness consented, and the defendant removed several planks from each partition, after which passage from one room to another was easy. These partitions did not extend to the ceiling. Those which separated these from the rooms occupied by the witness and his family did extend to the ceiling. Mrs. Lydia Huberick lived in the rooms rented by defendant. The defendant lived in them, too. Mrs. Huberick lived in those rooms, occupied at the same time by the defendant, for two and a half or three months. The parts of the partitions between the three rooms were removed about the time Mrs. Huberick moved in.

Furniture was brought into the rooms about the time Mrs. Huberick came, but witness did not know of what articles it consisted. There was one bed in one of the rooms. Witness could not say there were or were not others, as he was never in the rooms while occupied by defendant and Mrs. Huberick, and only saw the parts of the bed mentioned, through a door, when he passed through the hall to his own apartments. Defendant and Mrs. Huberick left witness's house together. Witness received all the rent for the three rooms from the defendant. Mrs. Huberick paid no part of it. The defendant's place of business, a small brick store, fronted on the street, and adjoined the rear of the witness's house. In the rear of his, defendant's, store the defendant had another house built. He commenced its erection while he and Mrs. Huberick occupied the rooms in witness's house. This was finished four or five days before defendant and Mrs. Huberick left witness's house, and it was into this house they moved.

On his cross-examination, the witness described the construction of his house, and located his own apartments in the southeast corner, those of defendant and Mrs. Huberick in the northeast corner, and those occupied by Bonouli and wife in the northwest corner. Witness saw Mrs. Huberick sometimes washing and sometimes cooking in those rooms. Witness several times saw the defendant's shop boy go into those rooms, but could not say that he lived there.

On re-direct examination the witness stated that there was a side door to one of the three rooms described, looking toward Bonouli's apartments. Prior to Mrs. Huberick's occupation, this door was usually kept open. Subsequently, during her stay, it was kept closed.

C. S. Bolles testified, for the State, that he was a carpenter and builder by occupation. One or two months previous to this trial witness built a house for defendant in the rear of his, defendant's, brick store. While at work on this building, witness often passed through defendant's place of business. He did not see Mrs. Huberick about the premises on any of these occasions.

Joe Werthman, for the State, testified that he kept a saloon across the street from Brune's building. Witness could not say that he saw defendant and Mrs. Huberick together on or about July 17, 1883, but prior to that time he frequently saw them together in the same room in Brune's building. On these occasions defendant generally had his coat off, and Mrs. Huberick was standing or sitting around.

S. P. Thomas testified that, some eight or nine months previous to this trial, the defendant told him that he had had carnal intercourse with Mrs. Huberick.

Joe Mas, a lad of thirteen years of age, testified for the State, that, prior to his present employment he worked for the defendant at his store. Defendant then lived up stairs in Brune's house, and Mrs. Huberick lived with him. Witness was in those rooms twice. He did not know where defendant slept at that time. Witness was not working for the defendant when he and Mrs. Huberick left Brune's.

The State then produced in evidence the license and certificate of Paul and Lydia Huberick's marriage.

Billy Wells testified, for the State, that he saw the defendant in the window of one of the rooms in Brune's building, about ten o'clock p. m., on or about the seventeenth day of July, 1883. A woman was with the defendant, but witness could not say that Mrs. Huberick was the woman.

E. Loza, for the defense, testified that he was in defendant's rooms during the months of May, June and July. There were three rooms on the right hand side, going up. A door opened into the first. There were openings between the first and second, and between the second and third rooms. Witness saw Mrs. Huberick in the first room, cooking, on two occasions. Witness

saw two beds, one in the north room, which was the room occupied by Mrs. Huberick, and one in the room next to it.

The motion for a new trial raised the questions discussed in the opinion; otherwise it assailed the charge of the court, and denounced the verdict as unsupported by the evidence.

*Showalter & Nicholson* for the appellant: When two persons are jointly charged with an offense of such a nature that the defendants may act a different part in the transaction, and the evidence affects them differently, the acquittal of one might not operate as an acquittal of the other, but in that event the record of the acquittal of the one should be submitted to the jury as a question of fact for their decision whether or not it did operate as an acquittal of the other. But where two persons are jointly charged with the commission of an act or offense which it is legally and physically impossible for either party to have committed in any degree without the joint act of both parties, as in adultery, the acquittal of one on a separate trial operates as an acquittal of the other, and is a question of law for the court to decide, and should not be submitted to the jury. Mr. Bishop, in his learned work on criminal law, in commenting on the subject of joint indictment, says: "If the acquittal of one shows the others to be necessarily free from guilt, they will not be adjudged by the court to be guilty, though the jury find them so," and in illustration of this principle, says: "Although one of two conspirators may be proceeded against after the other is dead, or during the life of both, they may have separate trials, yet if one is acquitted where two only are charged in the allegation, this is in effect an acquittal of the other, it being legally impossible for a man to conspire alone."

Mr. Wharton, in his work on criminal law, in commenting on the same subject, makes use of the following language: "And even parties to the crime of adultery may be indicted jointly; though where two are jointly indicted for fornication or adultery, and are tried together, and one party is found guilty, and the other not guilty, no judgment can be rendered against the former." Under the Texas Code, where two are charged jointly in an indictment or information, they are entitled to separate trials, without any distinction as to the nature of the offense charged. Such being the law, is there any distinction as to the effect of an acquittal of one where two only are charged, whether they are tried together or separately? It is no lon er

an open question in this State that the record of acquittal of one of several defendants charged with the offense of conspiracy is admisssible as evidence in favor of another of the defendants subsequently tried. (*Paul* v. *The State*, 12 Texas Ct. App., 366.) In rendering the opinion in said case, the following language by Mr. Greenleaf is cited with approval: "If two only be charged with conspiracy, and one be acquitted, the other must be acquitted though he be guilty of doing the act charged, for it will be no conspiracy however otherwise it may be criminal." In the recent case of *Casper* v. *The State of Wisconsin*, where the offense charged was conspiracy, Ryan, the chief justice, in rendering the opinion of the court, said: "Where several are prosecuted together for crime which one or other limited number only cannot commit, like conspiracy or riot, and are taken and may be brought to trial, and on separate trials verdicts go against a number incapable in law of committing the crime, judgment against those found guilty should be suspended until the number necessary to the crime are convicted; failing in that, those against whom verdicts have been found should be discharged."

Under the foregoing authorities, the distinction is made that when several are charged jointly with the commission of such crimes as the law requires the joint act of two or more, as in conspiracy or adultery, and several are charged jointly, and on separate trials one is acquitted, the record of such acquittal is admissible as evidence in behalf of the others not yet tried; but when two only are charged, and one is acquitted, either on a joint or separate trial, such acquittal operates as an acquittal of the other, and it becomes the duty of the court, even of its own motion, to order the prosecution against the one found guilty, or, as in this case, not yet tried, to be dismissed.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE.    Defendant and one Lydia Huberick were jointly charged by information with living together in adultery, defendant being unmarried, and said Lydia being a married woman.    Lydia Huberick severed from her co-defendant upon the trial and was tried first, the trial resulting in her acquittal. When defendant's case was subsequently called for trial he filed a special plea of former acquittal, in substance setting forth that the information charged a joint offense against Lydia and himself; that they were charged with adultery with each other;

that a severance was granted; that Lydia had been tried and acquitted for said offense; and that her acquittal in law operated as an acquittal also of himself of the said charge. On motion of the county attorney, this plea was stricken out, and this action of the court is assigned as error.

In North Carolina it has been held that "after the acquittal of one of the defendants (in a joint charge of adultery), there could be no judgment against the other. The crime charged on these persons could not be committed but by both of them; and upon a verdict that one of them was not guilty, it appears conclusively that the other could not be. It is exactly like the case of riots, conspiracies, and principal and accessary which we find in the books. The farthest the courts have gone is to allow one of the parties to be tried by himself and convicted, and then judgment is given against that party, because as to him the guilt of the other party is found, as well as his own. But when the one has been previously tried and acquitted, or when both are tried together and the verdict is for one, the other cannot be found guilty, for he cannot be guilty, since a joint act is indispensable to the crime in either, and the record affirms that there was no such joint act." (*State* v. *Mainor and Wilkes*, 6 Iredell, N. C., 340; *State* v. *Parham*, 5 Jones, N. C., 416.)

We cannot give our assent to the doctrine of the above cited cases, nor to the reasoning upon which the same are founded. We think the reasoning of these decisions is based upon false premises and is fallacious. While it is true that, to constitute adultery, there must be a joint physical act, it is certainly *not* true that there must be a joint criminal intent. The bodies must concur in the act, but the minds may not. While the criminal intent may exist in the mind of one of the parties to the physical act, there may be no such intent in the mind of the other party. One may be guilty, the other innocent, and yet the joint physical act necessary to constitute adultery may be complete. Thus, if one of the parties was, at the time of committing the physical act, insane, certainly such party has committed no crime; but it certainly cannot be contended that the other party, who was sane, has committed no crime. So, if one of the parties was mistaken as to a matter of fact, after exercising due care to ascertain the truth in relation to such fact, which fact, had it been true, would have rendered the alleged criminal act legal and innocent, the party so acting under such mistake of

fact would be innocent of crime. (Penal Code, Art. 15; *Watson* v. *The State*, 13 Texas Ct. App., 76.) But suppose the other party was not mistaken as to such fact, but, on the contrary, well knew the true fact which rendered the connection illicit, would this party be regarded as guilty of no offense because the mistaken party was innocent?

If the North Carolina rule is correct, it must apply also to fornication, bigamy and incest. Now, suppose a father and his daughter are indicted for incestuous intercourse with each other. Upon trial of the daughter it is conclusively proved that at the time of committing the physical act she was an idiot, or that she was wholly ignorant of the relationship existing between herself and her father, without any fault of hers; of course in either of these cases she must be acquitted. Would it not be monstrous to hold that because of her innocence—her acquittal —the beastly father must go unpunished for his unnatural crime? Such cannot be the law, and such, we believe, is not the law as declared by the weight of authority.

In Missouri, it has been held, in a case of incest where one party had knowledge of the relationship and the other was ignorant of it, that the former may be convicted and the latter acquitted. (*State* v. *Ellis*, 74 Mo., 385.)

In Tennessee, a question similar to the one at bar was decided adversely to the doctrine enunciated in the North Carolina cases referred to. As the opinion is very short and pointed, we will quote it at length. It is as follows: "Defendant, with a woman named Green, were jointly indicted for open and notorious lewdness. The parties severed for trial, and the woman was acquitted. A plea was filed in bar to the further prosecution on the part of defendant on the ground that the acquittal of the woman operated as equivalent to an acquittal of the man, as the offense could only be committed by two persons. The plea was demurred to, but the demurrer was overruled. The attorney general declining to take issue on the plea, the defendant was discharged and the State appealed. We think the court erred in refusing to sustain the demurrer. The State might fail to be able to make proof of the offense in the trial of one party from many causes, yet might be able to make proof on the trial of the other. We so held at Nashville some time since, and approve the holding. The acquittal of one could not show the other not guilty." (*State* v. *Caldwell*, 8 Baxter, Tenn., 576.)

Mr. Wharton says: "The weight of authority is that the two

participants in adultery may be joined in the indictment, or may be tried singly. And one may be convicted and punished without any conviction of the other." (2 Whart. Cr. Law, sec. 1730.) Again, this same author says: "In other joint offenses it is necessary to prove the concurrence of the participants. This, however, is not necessarily the case in adultery, of which a person may be guilty who commits the offense by force." (Ibid., sec. 1724. See also State v. Saunders, 30 Iowa, 582.)

Mr. Bishop says: "As every offense to be punishable must be voluntary, so in particular must be adultery. But alike in adultery, and it is believed in fornication and incest, where the crime consists of one's unlawful carnal knowledge of another, it is immaterial whether the others participated under circumstances to incur guilt or not—just as sodomy may be committed with a responsible human being, or an irresponsible one, or a beast. Therefore, the same act of penetrating a woman, who, for example, is too drunk to give consent, may be prosecuted either as a rape, or as adultery, at the election of the prosecuting power. There are cases which deny this, and hold that adultery, fornication and incest can be committed only with consenting persons, and what is rape cannot be one of the others. But they are believed to proceed partly, and perhaps entirely, on special terms of statutes. Certainly in principle they can have no other just foundation." (Bish. Stat. Crimes, sec. 660.)

But, independently of other authorities, we think the provisions of our Code of Criminal Procedure are decisive of this question. Article 525 provides that the only special pleas allowed a defendant are, first, a plea of former conviction, and second, "that he has been before acquitted by a jury, of the accusation against him, in a court of competent jurisdiction, whether the acquittal was regular or irregular." Now, how can it be said that this defendant has been acquitted upon an accusation upon which he has never been tried? We cannot perceive the applicability of a plea of former acquittal in such a case.

Again: Article 717 provides, "Where several defendants are tried together, the jury may convict such of the defendants as they deem guilty, and acquit others." No exception is made to the operation of this provision in the case of a trial for adultery, or in any other case. Suppose the defendants in this case, being jointly indicted, had been jointly tried, and one of them had been acquitted, and the other convicted, would not such a verdict have been expressly authorized by the last quoted article of

the Code? We think so, and, being so warranted, the court could not have declined to pronounce the judgment of conviction.

We therefore hold that the court did not err in sustaining the motion of the county attorney to strike out the special plea of former acquittal filed 'by the defendant. The acquittal of his co-defendant could in no manner affect the question of his guilt or innocence, and the case must be considered without reference to such former acquittal of his co-defendant.

2.   Upon the trial of the case the court, over the objections of the defendant, permitted Paul Huberick, the husband of the said Lydia Huberick, to testify in the case. This was not error. Lydia Huberick, the wife, was not on trial, and it was therefore not the case of the husband testifying against the wife. In the case of *Morrill* v. *The State*, 5 Texas Court of Appeals, 447, this precise question arose, and it was there determined that the husband was a competent witness against the wife's paramour. This does not conflict with the case of *Compton* v. *The State*, 13 Texas Court of Appeals, 271, where it was held, in a prosecution against the defendant for incest, that his wife was incompetent to testify against him. If the wife had been on trial, instead of her paramour, the testimony of the husband would have been incompetent.

3.   In his charge to the jury, the learned judge omitted to instruct as to the presumption of innocence and as to reasonable doubt.  A special instruction supplying this omission was requested by defendant, and was refused. This was error. (*Hutto* v. *The State*, 7 Texas Ct. App., 44.)

4.   Among other things, the court, at the request of the county attorney, charged the jury that "circumstantial evidence is often as strong and as conclusive upon the understanding as direct and positive evidence." Such a charge was, in *Harrison* v. *The State*, 9 Texas Court of Appeals, 407, held to be a charge directly upon the weight of evidence, and therefore erroneous.

Other errors are complained of which we do not discuss, as they are not likely to occur on another trial, and because we are of the opinion that none of them are tenable.

Because of the errors we have designated, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered February 6, 1884.