STATE v. SHIRER.

1. To quash an indictment is not a proceeding as of right; but the motion is addressed to the discretion of the court, and, generally, the decision of the presiding judge is not open to review on appeal.

2. The provision in the United States constitution that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb" applies only to offenses and trials under the laws of the general government.

3. In a trial for larceny there was a mistrial. At the next term, the former indictment was marked *nolle prosequi*, and a new bill found. *Held*, that defendant was not entitled to his discharge under a plea of *autrefois acquit*.

4. Under the express terms of the constitution of this State, that "no person, after having been once acquitted by a jury, shall again, for the same offense, be put in jeopardy of his life or liberty," which provision was intended to be exclusive and exhaustive, a party cannot plead a former jeopardy in bar of the prosecution unless he has been acquitted by a jury.

5. The general rule in framing an indictment is, that the offense shall be so described that the defendant may know how to answer it, the court what judgment to pronounce, and that a conviction or acquittal on it may be pleaded in bar to any other indictment for the same offense.

6. The act making breach of trust with fraudulent intent larceny, applies, not only to cases which the common law did not reach, but also to cases where a fraudulent appropriation did constitute larceny at common law, as, *e. g.* money taken by a clerk to whom it was intrusted, but which, technically, was in the possession of his employer.

7. In an indictment for breach of trust with fraudulent intent, ownership of the property must be alleged with the same accuracy and after the same rules as in common law larceny; this was substantially done in this indictment.

8. In describing the money taken as "the sum of three hundred and ninety-five dollars, lawful currency of the United States, of denomination and issue to the jurors aforesaid unknown," the indictment sufficiently individualized the transaction, although it omitted to charge the "kind of currency."

9. In criminal cases, this court cannot review questions of fact passed upon in the court below.

---

Before WALLACE, J., Orangeburg, May, 1883.

This was a prosecution against George S. Shirer for breach of trust with fraudulent intent, and larceny, in taking money out of the safe of Banks & Smith, by whom defendant was employed. The defense was, that defendant was called out of his house after midnight, and then taken and tied by two men, who forced him to tell them the combination of the safe-lock. The opinion states the case.

The ruling of the presiding judge upon the motion to quash and the motion for new trial and in arrest of judgment and upon the demurrer, need not be given. His charge to the jury was as follows:

We have a statute that is in these words: "Any person com-

mitting a breach of trust with a fraudulent intent, shall be held guilty of larceny." The defendant stands charged under that statute. He stands further charged with the offense of larceny at common law. You have heard the testimony. You have heard that testimony discussed by experienced and able counsel. You are to collect from that testimony the truth of the facts. It is for that purpose in our courts that juries are organized. The law devolves upon me the duty of explaining to you the nature of the offenses with which the defendant stands charged. Then your duty is to apply the truth of the facts to those rules that I will state to you and to draw your conclusion whether, or not, those offenses have been committed by this defendant.

There are four counts in the indictment. The first count charges a breach of trust under the statute that I have read to you. Now, what is a breach of trust? Before there can be a breach of trust there must be a trust. Now what is a trust, in the sense in which that word is used in this statute? A breach of trust is where personal property of appreciable value and of which larceny may be committed is put into the possession of another; and when it is so put into his possession it becomes a trust, and while it so remains, if he conceives the purpose to convert that property to his own use, and does it with intention to deprive the owner of the use of that property, then that is a breach of trust with a fraudulent intent.

Now I will point out to you presently how that differs from stealing—from larceny at common law. There must be in the possession of the defendant·charged, a sum of money in this case, either bank bills, or gold, or silver coin, or both, the property of Messrs. Banks & Smith. It must be in his possession—in his entire and complete possession. He must not share the possession with anybody else. If you should find, in this case, that money belonging to these prosecuting witnesses was in the possession of this defendant, and that he converted it to his own use, intending to deprive them of it, then that would be a breach of trust with fraudulent intent.

Now, in any one of the stores in this town, there may be proprietors and clerks—there may be in the store-room where the money is put, a drawer, and to which everybody, who has a

right to be there and participate in the transactions of the business, has a right to go. That money is not in the possession of the clerks, but in the possession of those to whom it belongs. But if those to whom it belongs should take that money or any part of it and put it in the hands of the clerk and send him to Charleston to buy goods with it for them, then it is in the possession of the clerk, and if under those circumstances he converts it to his own use, that is a breach of trust. You will see, therefore, to sum up on this subject, that there must be money in the possession of this defendant, belonging to these prosecuting witnesses, and that after it is in his possession he has converted it to his own use in order to find a verdict of guilty on the first count. Do the facts as ascertained from the testimony satisfy you, beyond a reasonable doubt, of the existence of that state of things? If so, you must find the defendant guilty on the first count. If not so, you must acquit him on the first count.

Now there are three other counts, all relating to the crime of larceny at common law. What is larceny at common law? It is the taking and carrying away of the goods or chattels of another with the intention to convert them to the taker's use. In that case, he takes goods that are not in his possession at the time of the conception of the fraudulent intention, and that is the distinction between larceny and breach of trust. In one case the goods are already in his possession and in the other case, to make out larceny, the goods are not in his possession until he feloniously takes them. Did this defendant do that? Are you satisfied from the testimony that he did do it—that he feloniously took the money, either greenbacks, gold or silver coin, or both, from the possession of Messrs. Banks & Smith, and converted it to his own use. If so, convict him of larceny. If you are not so satisfied, acquit him of larceny.

You will observe that in regard to the facts in this case I have not said one word to you. To say what degree of force and effect to attach to the statements of the witnesses—to say what is credible and incredible, is a matter which the law devolves entirely upon you, and prohibits the presiding judge to give his opinion on that subject. My duty is to declare the legal rules involved in the charges. You decide from the testimony

whether those charges have been made out to your satisfaction beyond a reasonable doubt. If they have been, you must convict the defendant. If they have not been, you must acquit him. Whenever a defendant is charged in this court with a crime against the laws of this State, he comes into court under the presumption of innocence. Whenever he is arraigned at that bar he is under the legal presumption of innocence, and he stands an innocent man and must go an innocent man, unless that presumption is removed by the testimony adduced against him, to the extent of satisfying the jury beyond a reasonable doubt, of his guilt. He does not have to establish his innocence. There could be no phase of any criminal case in South Carolina where the obligation is upon the defendant to establish his innocence. He is an innocent man and is entitled to an acquittal until the testimony establishes his guilt beyond a reasonable doubt. But whenever the testimony reaches that point of establishing his guilt beyond a reasonable doubt, then all presumptions of innocence fade out of the case and stand no longer as a shield and protection against the charge of the crime.

So if you should think the defendant is guilty of a breach of trust committed with a fraudulent intent, if the testimony satisfies you of that beyond a reasonable doubt, say guilty on the first count. If you are not so satisfied, say not guilty on the first count. If you are satisfied from the testimony that the defendant is guilty of grand larceny—that is, of having stolen money, either bills or coin, or both, to an amount above $20, say guilty of grand larceny. If the proof does not satisfy you that he is guilty beyond a reasonable doubt of either breach of trust or larceny, say not guilty generally.

The jury having failed to agree, and being sent for by the court, were asked if they desired to have the testimony read to them or any further instructions as to the law. At the request of jurors, extracts of testimony were read, and, in response to a request from a juror for further instruction as to the difference between breach of trust and larceny, the court charged as follows : If Mr. A. is in possession of personal property of his own, and B. takes the property away from A., intending to convert it to his own use, that is larceny. If A. owns property and puts it

in the hands of B. for B. to go to Charleston to buy goods with,. and after he starts or while he is in Charleston, if it occurs to him that he will take that money and apply it to his own use,. that is a breach of trust, because A. has trusted him and created a trust in his hands, and after that is done he conceives the intention of making use of the property put into his hands. He could not commit a larceny of property placed in his hands, for a larceny is to take, originally, and carry away the property of another with the intention to convert to the taker's use. In this case, if Mr. Shirer had put in his possession money belonging to Mr. Banks and Mr. Smith, and he had it in his possession, and after he had it in his possession he held.it as a trust, and he conceived the idea of taking that money and appropriating it to his own use, and deprive Banks & Smith of it, that would be a breach of trust; but if it was not in his possession, and was in the possession of Banks & Smith, and he took it, it never having been intrusted to him, that would be a larceny.

Suppose that money was in this safe, and that Mr. Banks and Mr. Smith, either or both of them, as partners, had access to that money whenever they pleased, and Mr. Shirer, to enable him to carry out the purposes of his employment, had access to it too, then you see it is no more in the possession of Mr. Shirer than it is in the possession of Banks & Smith. If that should be the state of facts, Mr. Shirer could not commit a breach of trust with that money, because it was not exclusively in his possession. But Mr. Banks and Mr. Smith, having equal access and control of that money, in legal contemplation it was in their possession, and he could not commit a breach of trust of that money, for no trust of that money existed. But he could commit a larceny of that money, because, it being in the possession of Banks & Smith, if he took it out of their possession and appropriated it to his own use, that was larceny. Now, if Mr. Shirer had money belonging to Banks & Smith in his possession, by their consent, to which they did not have equal access with him, that was in his possession and put there separate and apart by him, and he appropriated that money to his own use,. intending to deprive the real owners of their money, that was a breach of trust with a fraudulent intention.

BY A JUROR—Do you mean to say that that money was in the drawers of that safe, and Mr. Shirer had the keys and took the money out of those drawers, and if he did that it was larceny? '

BY THE COURT—No; I mean to say that that is a matter of fact for you. The question of possession is a matter of fact for you to determine. If there was money in that safe, to which Mr. Banks and Mr. Smith had access just as much as Mr. Shirer had, and Mr. Shirer took it out of the safe, intending to divert it to his own use, that was larceny. If Mr. Shirer was arrested and tied by two men, and, under the threats of these men, surrendered the combination by means of which the safe was unlocked and those men went and took the money, then those men committed the larceny and Mr. Shirer did not. If Mr. Shirer took the money and then tied himself down there, then he committed the larceny, or the breach of trust, as you may determine. You must decide from the facts whether the money was in the possession of the defendant or in the possession of the real owners. If Mr. Banks and Mr. Smith had access to that money whenever they pleased, just like the proprietor of a store has access to his cash-box, and like the clerks have access to it, then the possession of that money was not in Mr. Shirer but in Messrs. Banks & Smith. But if that money was intrusted into the absolute possession of Mr. Shirer, and they did not have such an access, then the trust was created.

*Mr. Samuel Dibble,* for appellant.

The indictment should allege ownership with the same particularity as in larceny. *Russ. & R. C. C.* 23; 3 *Bos. & P.* 106; 2 *East P. C.* 576; 2 *Leach C. C.* 932. This was not done here. There is a lack of particularity in the description of the articles alleged to have been fraudulently converted; the kind of currency should have been stated. 20 *Gratt.* 716; 47 *Ala.* 53; 3 *Heisk.* 333; 45 *Ala.* 66; 41 *Tex.* 164, 232; *Const. of S. C., Art. I.,* § 13. Breach of trust, made larceny by statute, applies only to cases which the common law did not reach as larceny. *Russ. & R. C. C.* 160; 5 *Car. & P.* 143; 9 *Id.* 27; 4 *Taunt.* 304; 1 *Dears. & B.* 431; *Crim. L. Mag.,* Sept., 1880; 9 *Metc. (Mass.)*

142; 9 *Cush.* 284; 99 *Mass.* 429; *Rosc. Cr. Ev.* 600; 2 *Arch. Cr. Pl.* 343; 2 *Whart. Cr. L.,* § 1941. After jury are charged on a valid indictment, it cannot be withdrawn and new bill given out. *Cooley Const. Lim.* 328; 1 *Bish. Cr. L.,* § 1013. Whenever a jury is charged the prisoner's jeopardy begins, and it continues until that case is ended, by acquittal or *nolle prosequi.* A new bill substitutes another peril. The point suggested in 48 *Cal.* 331, was an *obiter dictum* of Judge McKinstry. See 4 *Crim. L. Mag.,* July, 1883; 9 *Bush* 333; 1 *Bailey* 657.

*Mr. Solicitor Jervey,* contra.

February 23d, 1884. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. The defendant, George S. Shirer, was indicted in the Court of General Sessions for the county of Orangeburg, at the October Term, 1882, under the statute of 1866, which declares that "any person committing a breach of trust with a fraudulent intent shall be held guilty of larceny," re-enacted in general statutes as section 2493. Upon motion of defendant's counsel, the presiding judge, Pressley, quashed the indictment upon the grounds, principally, that the facts set forth did not constitute a breach of trust, but simple larceny, and that the ownership of the property was not sufficiently alleged.

At the January Term of 1883 he was again indicted upon the same transaction, in four counts; one for fraudulent breach of trust, and three with some variations for grand larceny. Judge Cothran granted a motion to quash the first count for fraudulent breach of trust, leaving only the three larceny counts. Upon these the defendant pleaded "not guilty;" and a jury being charged with the issues, failed to agree upon a verdict, and were discharged by the court, and the cause was continued.

At the May Term, 1883, the solicitor entered a *nolle prosequi* upon this indictment without the consent of the defendant, and gave out a new bill based upon the same transaction, which contained a count for fraudulent breach of trust, and three counts for larceny as before. The first count charged as follows: "That the said George S. Shirer, on the 20th day of June,

1882, with force and arms at Orangeburg, in the county of Orangeburg and State aforesaid, did unlawfully and feloniously commit a breach of trust with fraudulent intent, in this, that the said George S. Shirer, being then and there a clerk and in the employment of one Hugh R. Banks, and one T. Ogier Smith, trading as copartners under the firm name of Banks & Smith, by virtue and reason of such employment was authorized and empowered to collect, receive and keep certain sums of money then and there due unto and owned by the said Banks & Smith; and that the said George S. Shirer, by virtue of said employment, was furthermore intrusted with the key of the office whereat the said Banks & Smith did business, and in possession of the combination by which the safe of the said Banks & Smith was locked and unlocked, and of two keys by which were locked and unlocked two drawers within said safe; that the said George S. Shirer, by virtue of the employment and authority aforesaid, on the said twentieth day of June in the year aforesaid, at Orangeburg, in the county and State aforesaid, did receive and had in his custody and possession the sum of $395, lawful currency of the United States, of denomination and issue to the jurors aforesaid unknown, of the value of three hundred and ninety-five dollars, which said sum of money he, the said George S. Shirer, then and there had and held in trust for the use of the said Banks & Smith, and to pay the same over to the order and under the direction of the said Banks & Smith. And the jurors aforesaid, &c., do further present that the said George S. Shirer, then and there having in his custody the sum of money aforesaid, which he held upon the trust aforesaid, did fraudulently and feloniously take, use, divert and convert to his own use," &c.

Upon arraignment, a motion was again made to quash the count for fraudulent breach of trust above given; but the motion was refused by Judge Wallace. The defendant then pleaded "former jeopardy" for the same offense; claiming that the jury having been charged with the trial of the cause, and a mistrial entered at the previous term, the entry of a *nolle prosequi* afterwards was equivalent to an acquittal, and entitled the defendant to his discharge. To this plea the solicitor demurred, and the

presiding judge sustained the demurrer and overruled the plea. The defendant then pleaded "not guilty," and the trial was had.

Among other things, it appeared that Banks & Smith were in the rice milling business at Orangeburg; that they had an office in which the business was conducted, and the defendant Shirer was employed by them as a general office clerk. Smith had general charge of the outdoor work, and Banks looked after the finances and office work. Shirer and Banks together kept the books of the concern; Shirer had charge of the cash on hand; that there was a safe in the office, with a combination lock, of which no one had knowledge but the partners and Shirer. All could enter the office and the safe; but inside the safe there were two drawers, to which Shirer alone had access. The use of these had been assigned to him for the purpose of keeping at night the cash received during the day. Shirer alone had the key to these drawers; and the allegation was that, on the night of the larceny, he had in this drawer $394, money belonging to the proprietors, Banks & Smith, which said money he, Shirer, in breach of the trust reposed in him, fraudulently appropriated to his own use.

Under the charge of the judge the jury rendered a verdict of "guilty on the first count" (for breach of trust with fraudulent intent), and "not guilty on the other count" (for grand larceny). The defendant, by his counsel, moved in arrest of judgment, and, failing in that, for a new trial. The presiding judge refused both motions, and sentenced the defendant to twelve months imprisonment at hard labor in the State penitentiary, and he appeals to this court upon the following grounds:

1. "Because his Honor, the presiding judge, erred in denying the motion of the defendant to quash the first count of the said indictment.

2. "Because the said count, upon which the judgment was pronounced, is fatally defective in this, that it does not comply with the requirements of article I., section 13, of the constitution of this State in the description of the offense charged; and his Honor erred in refusing so to rule.

3. "Because the said count is not sufficient in respect to the

2A

allegation of the ownership of the property alleged to have been feloniously converted; and his Honor erred in refusing so to rule.

4. "Because the said count is insufficient in this, that it lacks particularity of description of the property alleged to have been feloniously converted; and his Honor erred in declining so to rule.

5. "Because the said count is insufficient in this, that it does not allege facts and circumstances which constitute the statutory offense designated breach of trust with fraudulent intent; and his Honor erred in declining so to rule.

6. "Because, in two successive indictments against this defendant for the same offense as that charged in the said first count, and under the same prosecution, at two successive terms of the said Court of General Sessions, a count for a breach of trust with a fraudulent intent has been quashed by the judges presiding at said terms upon defects appearing in the said first count of the present indictment and contained in the foregoing exceptions; and his Honor erred in disregarding the said previous decisions in this cause.

7. "Because his Honor erred in overruling this defendant's plea of former jeopardy, and in sustaining the demurrer of the State thereto.

8. "Because his Honor erred in overruling the defendant's motion in arrest of judgment, and in denying his motion for a new trial, and in overruling each and every of the grounds submitted in support of the said motions, which grounds were as follows, to wit: (1) Because the matter alleged in the said first count of the indictment does not constitute the offense of breach of trust. (2) Because the said count does not state that the property alleged to have been feloniously converted was of the proper moneys of the said Banks & Smith, or of any other person or persons. (3) Because there is no sufficient allegation of ownership of the property alleged to have been feloniously converted. (4) Because there is no sufficiently particular description of the property alleged to have been feloniously converted. (5) Because the defendant's plea of former jeopardy is good and sufficient in law. (6) Because there is entire failure of

proof of breach of trust. (7) Because there is no proof that the property stolen was out of the legal possession of Banks & Smith; but all the proof shows that the defendant had the care, charge and custody thereof, but had not the legal possession. (8) Because there is no proof of any sum of money received by the defendant for Banks & Smith from any third person. (9) Because there is no proof of the receipt and conversion of lawful currency of the United States as alleged in the indictment. (10) Because there is no proof to correspond with such allegation on the subject of ownership of the property alleged to have been converted as may be found in the indictment.

9. " Because, in refusing said motions, his Honor erred in ruling as follows: (1) That ' if certain moneys were in the custody of the defendant, but in the legal possession of his employers, any fraudulent conversion of the moneys so held by him was breach of trust, which the statute declares to be larceny. (2) That it was not necessary that it should be in proof that the money was out of the legal possession of Banks & Smith. (3) That it was not necessary that there should be any proof of any sum of money received by the defendant for Banks & Smith from any third person. (4) That in case a servant or clerk is intrusted with funds of the employer, and the servant or clerk subsequently converts those funds to his own use, in fraud of the rights of his employer, he is guilty of larceny; and ' that our act and the common law are in exact accord, upon that subject.' (5) That our act which declares that ' any person committing a breach of trust with a fraudulent intention shall be held guilty of larceny,' is nothing more than the declaration of the principles of the common law ' in cases of this nature."

We will not attempt to consider the numerous exceptions *seriatim*, but to dispose of the points made in their regular order. First. The first and sixth exceptions allege error on the part of the Circuit judge, in refusing the motion of defendant to quash the first count of the indictment. We cannot say that this was error of law. To quash an indictment is not a proceeding as of right, but the motion is addressed to the discretion of the court. In ordinary circumstances, and according to what is believed to be the more common practice, the decision of the presiding judge

is not open to review by a higher court.   1 *Bish. Crim. Pro.,* §
701.   The modern practice is not to resort to the process of
quashing except in extreme cases.   At all events the same objec-
tions were afterwards urged on the motion in arrest of judgment
and will be considered when we come to that subject.   It may
be proper to state, however, that the count for fraudulent breach
of trust, which Judge Wallace refused to quash, differs in several
particulars from the count in former indictments, which were
quashed successively by Judges Pressley and Cothran.

Second.   Exception seven complains that the Circuit judge
committed error in sustaining the demurrer to the defendant's
plea of former jeopardy.   The precise point made is, that the
defendant, having been put to answer a former indictment which
resulted in a mistrial, and the solicitor having entered a *nolle
prosequi* on that indictment and given out another based upon
the same transaction, is entitled to his discharge precisely as if
the jury, on the former trial, had acquitted him.   In some
aspects this question is not free from difficulty.   It is believed
that in all civilized countries it is recognized as a fundamental
principle of justice, that a man ought not to be twice punished
for the same offense, but in carrying out the principle the author-
ities are not in accord; more particularly as to whether mere
jeopardy shall be regarded as punishment, and, if so, as to when
that jeopardy is to be considered as commencing and ending.   "It
is the universal maxim of the common law," says Blackstone,
"that no man is to be brought into jeopardy of his life more
than once for the same offense."   4 *Bl. Com.* 335.   The consti-
tution of the United States declares, "Nor shall any person be
subject for the same offense to be twice put in jeopardy of life or
limb."   *Article V. of Amendments.*   There was no express law
in this State upon the subject until 1868, when our present con-
stitution declared that "No person after having been once
acquitted by a jury, shall again for the same offense be put in
jeopardy of his life or liberty."   *Section* 18, *Article I.*

It seems to be now settled after some conflict in the authorities,
that the provision in the constitution of the United States
applies only to offenses and trials under the laws of the general
government.   1 *Bish. Crim. L.* 981, and *note.*   This being the

case, the courts in this State, up to 1868, could only conform to the doctrine as announced by the common law, which held that legal jeopardy was equivalent to punishment, and that necessarily brought along with it all the embarrassing questions as to when jeopardy attached and when it ended. Of course, by the very terms in which the rule is announced, both the first and second jeopardy had to be in regard to "the same offense;" and it will be observed that in this case the defendant, on the occasion of the mistrial, could not have been in jeopardy in regard to the offense of breach of trust, of which he was convicted on the last trial, for there was no such count in the indictment on which he was then committed to the jury. In reference to the question whether the offense is the same, the test is, "whether, if what is set out in the second indictment had been proved under the first, there could have been a conviction. Where there could, the second could not be maintained ; where there could not, it can be." 1 *Bish. Crim. L.*, § 1062. We take it that there could not have been a conviction on the first trial for larceny, upon proof only of what was set out in the count for breach of trust in the second indictment.

But it is claimed that the effect of the demurrer was to admit technically the statement of the plea that the offenses charged were the same, and we will let that matter pass. Taking it to be "the same offense," then, even in the view that the jeopardy attached as soon as the jury was charged with the trial, several exceptions had to be made from the necessity of the cases, in order to prevent a flagrant failure of justice. Our court held, in the case of *State* v. *McKee*, 1 *Bailey* 654, that "a jury, after they are charged, can be discharged and the prisoner tried a second time for the following causes only : first, the consent of the prisoner ; second, illness of one of the jury, the prisoner, or the court ; third, absence of one of the jurymen ; or fourth, the impossibility of their agreeing on a verdict." The case under consideration comes within the last exception. The jury could not agree and the judge had the right to discharge them and set down the case for a new trial.

So far there is clear precedent ; but it is earnestly urged that this authority for a second trial was necessarily limited to a trial

on the very same indictment, and that the withdrawal of that by the entry of a *nolle prosequi* and the substitution of another, entitled the defendant to his discharge. Why so? The doctrine underlying these exceptional cases seems to be, that there never was any real, but only apparent jeopardy "whenever, either in felony or misdemeanor, the judge discovers anything which will render the verdict void, or subject to be avoided by the prisoner, or will render it impossible that a verdict should be rendered—anything, in other words, establishing that no jeopardy has really attached to the prisoner—and that any further proceeding in the trial will be fruitless, he may adjudge the fact, put the adjudication on record and discharge the jury." 1 *Bish. Crim. L.*, § 1036.

Besides, there can be no doubt that even after trial, an indictment may be withdrawn, if it is discovered to be insufficient. There can be no legal jeopardy upon a bad indictment. 1 *Bish.*, § 1021. Nothing appears upon the subject of the sufficiency or insufficiency of the indictment here, but we suppose that there was some objection to it or it would not have been withdrawn. Be that as it may, it would seem that setting down a case for further proceedings, would give all the rights incident to such position, one of which is, that the solicitor may enter a *nolle prosequi* and give out a new bill, at any time before the jury is charged with the case. *State* v. *Gulden*, 2 *McCord* 524; *People* v. *Hunckeler*, 48 *Cal.* 334. In the case last quoted, as stated by the Circuit judge, Judge McKinstry substantially held, that the reason for the exceptions named, including the case of a mistrial, was that in these cases there never had been a real, but only an apparent jeopardy. We do not, however, think it necessary to make that ruling.

But there is another view. Our State constitution has a provision on the subject, which, in terms, differs both from that of the constitution of the United States, and from the maxim of the common law as announced by the learned judges. The words are: "No person, after having been once acquitted by a jury, shall again for the same offense be put in jeopardy of his life or liberty." We do not understand that this constitutional provision is to be considered as merely declaratory of the common law, but, on the contrary, as superseding and repealing it,

wherever the two are inconsistent with each other. "In England the common law maxim is a mere deduction made by some judge or text-writer from the adjudications, which must govern, if found in conflict with it; but with us the constitutional provision is supreme, and it must be the controlling power, though the result should be to overturn decisions." 1 *Bish. Crim. L.,* § 982. We cannot doubt that this provision in the constitution, which deals with the subject and touches the very essence of the matter, was intended to be exclusive and exhaustive—indeed, our only law upon the subject.

If we are right in this, our duty in the premises is simply to give to the provision proper construction, according to its terms. It will be observed that it makes no reference to a first and second jeopardy, but in lieu of the first, under the old doctrine, substituted the words, "after having been once acquitted by a jury," thus, as it seems to us, cutting off all the difficult and intricate questions as to the first jeopardy, what it is, when it arises and where it ends, &c. This provision of the constitution declares, explicitly, where a party shall not be put in jeopardy again for the same offense, and this declaration involves the idea as to when he may be so put in jeopardy. In other words, the provision presents a proper case for the application of the maxim, "*expressio unius est exclusio alterius,*" the expression of one thing causes the exclusion of another. That is to say, the provision that "no one shall be put in jeopardy again for the same offense after having been acquitted by a jury," causes the exclusion of those from that immunity who have not been so acquitted. See *Pott. Dwar. Stat., p.* 321, where it is said, "As exception strengthens the force of law in cases not excepted, so, according to Lord Bacon, enumeration weakens it in cases not enumerated." In this view, the Circuit judge was right in overruling the plea of former jeopardy, for, although the defendant had been previously put upon his trial, he had not been acquitted by a jury, and he was not therefore within the express terms of the constitutional provision.

Third. The 2d, 3d, 4th and 5th exceptions and the 1st, 2d, 3d and 4th grounds in arrest of judgment, allege that the count on which the defendant was convicted is fatally defective in many particulars therein indicated. Section 13 of the declaration of

rights in the constitution declares that " No person shall be held to answer for any crime or offense until the same is fully, fairly, plainly, substantially, and formally described to him." The requirements of an indictment are comprehensively stated in the case of *State* v. *Schroder*, 3 *Hill* 65, where it is said, " The general rule in framing an indictment is, that the offense shall be so described that the defendant may know how to answer it, the court what judgment to pronounce, and that a conviction or acquittal on it may be pleaded in bar to any other indictment for the same offense." Taking this as our guide, was the indictment in this case sufficient?

1. It is first said the count is insufficient, in that it does not allege facts and circumstances which constitute the statutory offense, designated as " breach of trust with fraudulent intent." We are not sure that we clearly understand this objection. The statute does not describe or define the offense. The indictment charges the offense in the very words in which it is stated : " That the said Shirer, &c., did unlawfully and feloniously commit a breach of trust with fraudulent intent in this," &c., then stating the facts. But if it is meant that, in analogy to some of the English acts which create the offense familiarly known as embezzlement, the defendant being a clerk, could not be convicted under our statute for larceny by breach of trust, in taking money which had reached the possession of the proprietor, and had been delivered to him, coupled with the trust of his calling, and was in his drawer under his exclusive control, then we think the objection cannot be maintained.

As we understand it, we have no law creating the special offense known as embezzlement, and the object of our act was simply to enlarge the field of larceny, removing what before might have been a defense for those who received property in trust and afterwards fraudulently appropriated it. See *State* v. *Thurston*, 2 *McMull.* 395. The question under our act is, whether the party charged received the property in trust, which he afterwards violated, without depending at all upon the inquiry as to how the trust was created, or by whom, or what may be the character of the person so intrusted. There may be some danger of confusion, or of confounding the offense with that of

embezzlement, where its application is made to a servant or clerk, whose possession, for certain purposes, is regarded as the possession of the proprietor; but we think the Circuit judge committed no error when he said "that in case a servant or clerk is intrusted with funds of the employer, and the servant or clerk subsequently converts these funds to his own use, in fraud of the rights of the employer, he is guilty of larceny, and that our act and the common law are in exact accord upon that subject." That is to say, as to that class of persons who, although committing larceny by breach of trust, may yet be convicted of simple larceny, by virtue of the legal fiction that their possession is that of the employer. As to this class of persons who can be so convicted, there may have been less use for the act, but property may be delivered in trust to those who are neither servants nor clerks, and for this class, especially, the act was necessary.

We do not understand, however, that our act was intended to apply only to cases where the common law could not reach. On the contrary, its terms are general, applying to all. "Any person committing a breach of trust with a fraudulent intent, shall be held guilty of larceny." We do not see why a clerk, who has received into his possession money of his employer in trust, and having it in his exclusive custody, appropriates it fraudulently to his own use, may not be indicted under the act for larceny by breach of trust, although for the same offense he might be indicted for simple larceny at common law. Indeed, since the statute, indictment under it would seem to be the proper proceeding, for, while a conviction for simple larceny possibly might be obtained by the aid of the fiction as to possession, the facts stated would make a case in precise accordance with the terms of the statute. As said by Mr. Bishop, "The statute declares that if one (any person) does so and so, his act shall be deemed simple larceny. Now, suppose the words are broad enough to embrace some things which were simple larceny before, are these things, in reason, less within the statute than those which were not larceny? I can see no reason whatever for the distinction. To make it is to violate analogies running through the entire field of the criminal law and the entire field of the law of statutory

interpretation." 2 *Bish. Cr. L.*, §§ 328, 329 and 367, and authorities in note to the section last quoted.

2. It is further objected, that the indictment was not sufficient in respect to the allegation of ownership of the property alleged to have been converted. The statutory offense charged in the count on which the defendant was convicted, is nearly akin to that of larceny—indeed, is larceny committed in a particular manner—and we suppose that the ownership of the property must be alleged with the same accuracy and after the same rules as in common law larceny, in which the indictment must aver the ownership of the stolen property as a part of its description and to assist in its identification. We do not understand that there is any set form in which it must be done, but the fact must be stated substantially. The whole scope and tenor of this indictment indicate, unmistakably, who were the owners of the money alleged to have been converted; but in the count for breach of trust, now in contention, it is not stated as clearly in form and manner as it might have been.

The authorities say that "bank bills and promissory notes are not technically goods and chattels," and therefore they should not be laid as "the goods and chattels of," &c. Some other terms must be used to express their ownership. The count referred to does not use the words "goods and chattels," which are usually employed in expressing "ownership." It charges "That the said George S. Shirer, being then and there a clerk in the employment of one Hugh R. Banks and J. Ogier Smith, trading as copartners under the firm name of Banks & Smith, by virtue and reason of such employment, was authorized and empowered to collect, receive and keep certain sums of money then and there due unto and owned by the said Banks & Smith. That the said Shirer did receive and had in his custody and possession the sum of $395, which said sum of money he, the said George S. Shirer, had and held for the use of the said Banks & Smith," &c. Taking the different parts and considering the whole count together, we think the ownership was substantially alleged to be in Banks & Smith, and we cannot therefore say that the judge erred in holding "that the ownership was stated clearly enough for the defendant to understand what he was called upon to answer."

3. It is still further urged, that the aforesaid count is defective in this, that it lacks particularity of description of the property alleged to have been converted. The words are, "the sum of $395, lawful currency of the United States, of denomination and issue to the jurors aforesaid unknown." The precise point of objection is, that the description is not full enough, in omitting the words "kind of currency" to the jurors unknown. The indictment must state with reasonable certainty what it was that was stolen, in order to individualize the transaction; and this object of the description should indicate how definite it must be. We do not see that the formal insertion of the words, "and kind of currency," would really have contributed anything in the way of individualizing the transaction. It would only have added another particular "to the jurors unknown."

When property is stolen it may be impossible to describe it fully. As was said by Judge Evans, in the case of *State* v. *Stuart*, 4 *Rich.* 363, "The law in relation to larceny requires nothing more than a general description, because often the thing stolen is never reclaimed from the thief, and a minute description would be impossible." This is especially true where the thing stolen is money, as to which few persons take any account, except, perhaps, as to the amount and denomination. Our statute makes it larceny to steal "any bond, warrant, bill or promissory note for the payment or securing the payment of any money, notwithstanding any of the said particulars are termed in law a chose in action." *Gen. Stat.*, § 2486. In the case of *State* v. *Evans*, 15 *Rich.* 33, it was held sufficient to describe the article stolen as "a ten-dollar bill of the currency of the country, commonly called paper money." It seems to us that the phrase, "lawful currency of the United States, of denomination and issue to the jurors unknown," described the subject of the larceny with as much certainty as the nature of the case admitted. 1 *Bish. Cr. L.* 171.

All the other exceptions relate to questions of fact—mostly alleged insufficiency of proof as to the receipt of the money by the defendant, its being in his exclusive custody when taken, and as to the existence of the trust and its breach. These were all questions of fact decided by a jury after a clear and full charge. They were properly presented to the Circuit judge,

upon the motion for a new trial, and we have no doubt were there fully argued by the zealous, able and indefatigable counsel for the defendant, but, as often before ruled, this court is not allowed to consider them.

The judgment of this court is that the judgment of the Circuit Court be affirmed.