600 S.E.2d 122

**The STATE, Respondent,**

v.

**Michael GONZALES, Appellant.**

**No. 3842.**

Court of Appeals of South Carolina.

Heard May 13, 2004.
Decided July 6, 2004.
Rehearing Denied Aug. 19, 2004.

Tara Shurling, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Assistant Attorney Gen-

eral David A. Spencer, all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

PER CURIAM:

Michael Gonzales was convicted of trafficking in methamphetamine pursuant to section 44–53–375 of the South Carolina Code and sentenced to thirty years imprisonment and a $200,000 fine. He appeals, arguing the trial court (1) lacked subject matter jurisdiction to impose judgment due to a faulty indictment, and (2) erred in admitting improper character evidence at trial. We affirm.

## FACTS

Gonzales was arrested after selling one pound of methamphetamine to undercover agents of the Spartanburg County Sheriff's Department. This transaction was the culmination of an investigation that began earlier the same day when Johnny Solomon offered to work as an informant for the sheriff's office.

On June 3, 2002, Solomon contacted Officer Rhett Fox and informed him that he had the ability to purchase marijuana from Gonzales. At the behest of Fox, Solomon placed a recorded phone call to Gonzales from Fox's office. Gonzales informed Solomon that he could not sell any marijuana, but could sell him one pound of the "other stuff" for "thirteen five." Solomon testified he understood "other stuff" to mean methamphetamine and "thirteen five" to mean a sale price of $13,500. Gonzales and Solomon arranged to meet later that afternoon in the bathroom of a local convenience store to complete the transaction. After three additional recorded conversations between Gonzales and Solomon concerning the sale, a meeting time of approximately 5:50 p.m. was agreed upon.

An undercover officer posing as the interested buyer accompanied Solomon, who was fitted with a body wire to record the transaction. Fox and other officers monitored the wire transmissions from a truck parked on the edge of the convenience store parking lot. The officers were waiting for the audio "take-down signal" before moving in to make an arrest.

Gonzales arrived at the convenience store with co-defendant Steven Shelhamer. Gonzales and Solomon entered the store and had a brief conversation, during which Solomon, as instructed, informed Gonzales that the transaction was to occur outside. Gonzales left the store and moved his vehicle next to that of the undercover officer. After he was introduced to Gonzales, the officer asked where the drugs were located. Gonzales answered that they were in Shelhamer's possession. Shelhamer handed a package wrapped in black plastic and tape to the officer. While weighing the package, the officer gave the takedown signal, and the other officers moved in to make the arrest. Gonzales fled the scene on foot, but was later arrested.

The package handed to the undercover officer contained 448.8 grams of methamphetamine surrounded by a layer of mustard and a layer of barbeque sauce,[1] all separated by plastic and wrapped in electrical tape. Gonzales was indicted for trafficking in methamphetamine pursuant to section 44–53–375 of the South Carolina Code and tried jointly with codefendant Shelhamer. *See* S.C.Code Ann. § 44–53–375 (2002). Appellant was convicted and sentenced to thirty years imprisonment and fined $200,000. This appeal follows.

## LAW/ANALYSIS

### I.  Subject Matter Jurisdiction

Gonzales contends that his indictment for "trafficking in methamphetamine ... in violation of § 44–53–375," was insufficient to convey subject matter jurisdiction to the trial court because section 44–53–375 does not contain the specific word "methamphetamine." We disagree.

For a circuit court to have subject matter jurisdiction to convict a defendant of an offense, one of three things must occur: (1) the grand jury true bills an indictment which sufficiently states the offense; (2) the defendant waives presentment in writing; or (3) the offense is a lesser included offense of a crime adequately charged in a true billed indict-

---

1.  At trial, Officer Fox explained that drugs are often wrapped "with any type of scented object" to conceal the odor of drugs from a trained drug dog.

ment. *State v. Primus*, 349 S.C. 576, 579, 564 S.E.2d 103, 105 (2002); *see also Carter v. State*, 329 S.C. 355, 362, 495 S.E.2d 773, 777 (1998); *Browning v. State*, 320 S.C. 366, 368, 465 S.E.2d 358, 359 (1995). An indictment adequately conveys subject matter jurisdiction to a trial court only if it states the charged offense "with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer." *Carter*, 329 S.C. at 362, 495 S.E.2d at 777. In determining whether an indictment meets this standard, however, a court should look at the indictment with a practical eye in view of all the surrounding evidence. *State v. Gunn*, 313 S.C. 124, 130, 437 S.E.2d 75, 78 (1993).

Gonzales was indicted for "Trafficking in Methamphetamine ... in violation of § 44–53–375, The Code of Laws of South Carolina, (1976), as amended." Section 44-53-375(C) reads as follows:

> A person who knowingly sells, manufactures, delivers, purchases, or brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, or conspires to sell, manufacture, deliver, purchase, or bring into this State, or who is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive possession of ten grams or more of ice, crank, or crack cocaine, **as defined and otherwise limited in Sections 44–53–110** ... is guilty of a felony **which is known as "trafficking in ice, crank, or crack cocaine"**. . . .

(Emphasis added.) Section 44–53–110 (2002), the definitional section of chapter 53 specifically referenced in the "trafficking in ice, crank, or crack cocaine" statute, defines "ice" and "crank" as "amphetamine or methamphetamine."

While the statute referenced in Gonzales's indictment does not include the specific term "methamphetamine" in its text, it does list the term's commonly accepted synonyms of "crank" and "ice." Furthermore, it clearly guides the defendant to the definitional statute where "crank" and "ice" are defined as "methamphetamine." Previously, this court has stated that "[a]n indictment phrased substantially in the language of the statute which creates and defines the offense is ordinarily sufficient." *State v. Guthrie*, 352 S.C. 103, 108, 572 S.E.2d

309, 312 (Ct.App.2002); *see also* S.C.Code Ann. § 17–19–20 (Supp.2003); *State v. Shoemaker,* 276 S.C. 86, 88, 275 S.E.2d 878, 879 (1981). Here, with the exception of this transposition of synonyms, the indictment is phrased in almost the exact language of the statute.

In *State v. Owens,* 346 S.C. 637, 552 S.E.2d 745 (2001), the supreme court held an indictment, even one that fails to allege a key element of an offense, sufficiently vests the circuit court with subject matter jurisdiction when a statute outlining the elements of the offense is referenced in the body of the indictment. *Owens,* 346 S.C. at 649, 552 S.E.2d at 751–52. In the case at bar, the indictment referenced such a statute, which in turn, clarified the elements of the offense by its own reference to a separate definitional statute. The fact that the statute referenced by Gonzales's indictment referenced another statute for definitional clarification does not constitute a substantial factual departure from the holding of *Owens.*

When viewing the sufficiency of an indictment from a practical standpoint, our fundamental determination "is not whether it could be made more definite and certain, but whether it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet." *Guthrie,* 352 S.C. at 108, 572 S.E.2d at 312. In the case before us, a specific listing of the alternative terms for methamphetamine (i.e."ice," "crank") in the body of the indictment would certainly make the indictment more definite and certain. However, the indictment in question, when practically viewed, contained the necessary elements of the offense and was clearly sufficient to apprise Gonzales of the charges he was to answer in court. Thus, the circuit court had subject matter jurisdiction to convict Gonzales of the charged offense.

## II. Admissibility of Evidence Concerning the Investigation of Appellant

Gonzales next argues the testimony of Fox and Solomon singled him out as a particular subject of a police investigation and therefore improperly called into question his character. Gonzales contends this admission of testimony was reversible error on the part of the trial court. We disagree.

Rule 404, SCRE, limits the circumstances when a defendant's character may be properly brought into evidence. Subsection (a) of the rule reads in relevant part: "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Pursuant to this rule, South Carolina courts have held that while "[e]vidence that police began an investigation because of reports of criminal activity [is] admissible ..., identification of an individual as the suspect of a criminal investigation, based upon speculation and effectively calling into question that individual's character, is not." *State v. Jones,* 343 S.C. 562, 575, 541 S.E.2d 813, 820 (2001) (citations omitted).

At trial, Officer Fox testified concerning his initial questioning of Solomon as follows:

Q: And what are you trying—are you trying to determine at [the initial questioning of an informant], if this person can be of use to you?

A: Yes, sir, basically ... we want to know if they are aware of actors in the drug trade that may be of interest or that can produce drugs to this person.

Q: And during this debriefing did the name [of Gonzales] come up?

Before Fox could respond to this line of questioning, Gonzales objected and the jury was sent from the courtroom. After hearing arguments by both counsel, the trial judge reiterated his pretrial ruling on this issue, namely that the prosecution could continue to elicit testimony regarding the meeting between Fox and Solomon but was to carefully avoid any reference to Gonzales's prior criminal convictions or any specific behavior regarding drug sales. The State was to limit all questioning to the alleged transaction at issue at trial.

After the jury was allowed back into the courtroom, Fox's testimony returned only briefly to Gonzales's status as a criminal suspect:

Q: In your discussions with Mr. Solomon, were you able to make a determination as to whether or not he could contact [Gonzales] for you?

A: Yes

Q: Were you able to make a—and what was that determination?

A: He knew him personally and knew how to reach him.

. . . .

A: This was an attempt to conduct an investigation that would result in an arrest and confiscation of illegal drugs.

Q: From [Gonzales]?

A: Correct.

We conclude the above testimony was not admitted in error because Gonzales's identification as a suspect of this investigation was not "based on speculation," nor did this identification "effectively [call] into question [Gonzales's] character." *Jones,* 343 S.C. at 575, 541 S.E.2d at 820. Before Gonzales was identified to the jury as a criminal suspect due to his known reputation as an "actor in the drug trade," an objection was made, and the jury was sent from the courtroom. At no time did testimony reveal to the jury that the police began their investigation of Gonzales because of speculative reports that Gonzales was a known drug dealer or a person of criminal character. Later testimony instead reflected that Gonzales became a suspect because of the specific personal knowledge of Fox that the informant could, on this particular occasion only, purchase illegal drugs from Gonzales.

■ The purpose of Rule 404 is to exclude evidence that tends to prove a defendant's guilt based merely on his reputation or character, i.e. evidence which implies "because this person is a bad guy or acted in a manner similar to this before, he is guilty." Therefore, evidence that shows a defendant was singled out as a particular suspect in a criminal investigation merely because of his character or reputation is inadmissible. *See Jones,* 343 S.C. at 574–76, 541 S.E.2d at 819–20 (finding testimony which singled out defendant as a murder suspect merely because of reports he held a "grudge" inadmissible); *German,* 325 S.C. at 26–28, 478 S.E.2d at 688–89 (finding testimony that defendant was a criminal suspect due to generalized reports that he was a drug dealer inadmissible). Had Fox answered counsel's question and identified Gonzales as a known "actor in the drug trade," Rule 404 would clearly have been triggered in this case. However, because an objection was made and the question was not answered,

Gonzales's character was never effectively questioned. What *Jones* and its ilk prohibit is not evidence that a defendant was once considered a suspect in the particular criminal investigation which led to the defendant's arrest, but evidence a defendant was made a suspect due to generalized reports of his character or past conduct.

In the case at bar, all testimony concerning Gonzales's status as the suspect of this criminal investigation was based on the personal knowledge of informant Solomon that he could purchase drugs from Gonzales on a specific occasion. Testimony regarding personal knowledge of a particular criminal transaction is not character evidence and therefore not inadmissible under Rule 404, SCRE. Accordingly, we conclude that the admission of the testimony at issue was proper.

## CONCLUSION

Because we find that the trial court had subject matter jurisdiction to convict Gonzales and that the disputed testimony was not inadmissible under Rule 404, SCRE, the decision of the trial court is

**AFFIRMED.**

HEARN, C.J., STILWELL, J. and CURETON, A.J., concur.