### STATE v. CARROLL.

1. Under a statute which prohibits "the habitual carnal intercourse with each other, without living together, of a man and woman, when either is lawfully married to some other person," the judge correctly charged that the carnal intercourse must be more than occasional, but properly declined to define "habitual carnal intercourse," and left it to the jury to say how frequent the act must be to make it "habitual."
2. Two parties were jointly indicted for adultery, but only one of them was arrested. *Held,* that the party arrested might be tried separately and alone, and his conviction is legal.
3. Resolutions passed at a public meeting and communicated to defendant, and his written response thereto, may be received in evidence against defendant as his admission of the offence charged.
4. Defendant signed this letter, after being told by the person who presented it to him for signature, that the presenter thought it was best for defendant to sign, and if he did, the threat of his expulsion from the community would be dropped. Defendant then signed under protest, saying that he did so to protect his family. *Held,* that the letter was not obtained under duress.
5. The words, "without living together," in this statute are not elements in the offence of adultery, and therefore their omission from the indictment furnishes no ground for an arrest of judgment.

Before NORTON, J., Orangeburg, May, 1888.

To the statement made in the opinion of this court, it is necessary to add only this: A witness for the State testified that the letter was written by Mr. Byuck and carried by witness to Carroll to sign. Carroll declined to sign unless the name of Laura Smoak was erased. Mr. Byuck declined to erase her name. Witness then took it back to Carroll and told Carroll he (witness) thought it would be best for Carroll to sign it, and that if he signed it, witness thought the whole matter would be dropped. Carroll then signed it under protest, saying that he did so to protect his family. This letter declared his intention to "at once and forever abandon all connection with Laura Smoak."

*Messrs. Izlar & Glaze,* for appellant.

*Mr. Jervey,* solicitor, contra.

January 3, 1889. The opinion of the court was delivered by

MR. JUSTICE McIVER. The appellant was indicted jointly with one Laura Smoak for adultery, the charge in the indictment being, "that the said Daniel J. Carroll and Laura Smoak * * * did unlawfully and habitually have carnal intercourse with each other, he, the said Daniel J. Carroll, being then and there a married man, and she, the said Laura Smoak, then and there being unmarried," &c.

At the call of the case, the solicitor announced that the defendant, Laura Smoak, not having been arrested, he would proceed with the trial of Carroll. Counsel for appellant objected unless both defendants were put on trial, the offence being joint, and the two being jointly indicted. The objection was overruled, and the court proceeded with the trial of appellant alone.

It seems that a number of the citizens of St. Matthews, where appellant resided, impressed with the belief that he was practising adultery with said Laura Smoak, assembled in public meeting and passed resolutions, which are set out in the record, demanding that appellant leave the town of St. Matthews within a prescribed time, on pain of an indictment for adultery, and such further action as might be deemed necessary. These resolutions, signed by forty-one citizens, were communicated to the appellant, who replied by letter, likewise set out in the record, in which he pledged himself to abandon, at once and forever, all connection with Laura Smoak. Amongst other evidence offered at the trial, these resolutions were offered, and the appellant objected, and the objection was overruled by the court in these words: "Not on the ground that the facts stated in the resolutions would thereby be put in evidence, but because they contain a charge of adultery against the defendant, and defendant's reply could only be known when the precise nature of the charge appeared; and when the charge was in writing, the rules of evidence ordinarily required the production of the writing." The solicitor, however, seeming impressed by defendant's objection, did not then put the resolutions in evidence.

At a subsequent stage of the case, appellant's letter in reply to the resolutions was offered in evidence by the solicitor, which, upon objection on the part of the defence, was ruled admissible,

the court saying: "In order to constitute duress, the party must be either under arrest, or some language must be used to induce him to believe that it would be better for him to confess, or he must be in such immediate danger of imprisonment, that being the ground of duress, that he is presumed in law not to be a free agent. Here, there was no immediate danger of arrest, neither was the party under arrest." What then occurred, as stated in the "Case" as settled by the Circuit Judge, is as follows: "The letter was then put in evidence; whereupon counsel for defendant requested the solicitor to put in also the resolutions to which the letter was an answer, which was done, no objection made." In the argument here, the counsel for appellant, while, very properly, recognizing the fact that he is bound by the "Case" as settled by the Circuit Judge, insisted, in justice to himself, that he is incorrectly represented as *requesting* that the resolutions be offered in evidence, and we can very well understand how this may be so. But, as will be seen under the view which we take, it makes no difference which version of what occurred is the correct one.

At the close of the testimony, the case was submitted to the jury under the charge of the Circuit Judge, and a verdict of guilty having been rendered, defendant, upon the minutes, moved for a new trial and in arrest of judgment, which motions were refused, and the defendant was sentenced to pay a fine of two hundred dollars, or be imprisoned in the State penitentiary, at hard labor, for the period of six months. Thereupon defendant appealed upon the several grounds set out in the record.

The first ground imputes error to the Circuit Judge in refusing to charge as follows: "That to establish the crime of adultery, where the parties are not charged as living together, the testimony must satisfy the jury beyond a reasonable doubt that the criminal intercourse was habitual—that is, frequent; occasional acts will not be sufficient." In response to this request, the Circuit Judge said: "I charge you that is the law, except that I decline to charge you what habitual is. I charge you that it is not occasional, but how frequently it must be committed to make it habitual, I leave to your discretion. I am not prepared to say how often the act must have been committed, nor how nearly

together those acts must occur, in order to constitute habitual carnal intercourse. That is for you. I charge you that it is not occasional, but habitual. With that modification, I charge you that request." From this statement, it seems to us quite clear that the Circuit Judge did charge precisely as requested—that to constitute the offence charged, the carnal intercourse must be habitual—"that is, frequent. Occasional acts will not be sufficient." He adopted the very language of the definition of the word "habitual" as presented in the request—that is, frequent, not occasional. The fact that he went on to say that he could not undertake to tell the jury how frequent the acts of carnal intercourse must be, or how near together they must occur in order to constitute habitual intercourse, was really no modification of the request, which was charged explicitly in the very language selected by the appellant.

The second and third grounds of appeal impute error to the Circuit Judge in declining to define the terms, "habitual carnal intercourse," as used in the statute, and leaving the interpretation of those terms to the jury. The language of the statute, as found in section 2589 of General Statutes, is as follows: "Adultery is the living together and carnal intercourse with each other, or habitual carnal intercourse with each other without living together, of a man and woman, when either is lawfully married to some other person." Under this statute, adultery may be committed in either one of two ways: 1st. Where a man and woman, one of whom is married to another person, live together in carnal intercourse. 2nd. Where, not living together, they indulge in habitual carnal intercourse, and the indictment in this case falls under the second head. It will be observed, that the statute does not undertake to define either the word "habitual" or the word "carnal," and their meaning must be determined by the common sense of mankind; and in the absence of any statutory definition, it would be very difficult, if not absolutely impossible, to define, with any greater precision, the terms, "habitual carnal intercourse," than was done by the Circuit Judge in this case—that it must be frequent and not occasional—but how frequent to make it habitual, must be left to the common sense of the jury.

What are the habits of a person must necessarily be a question

of fact.  For example, where the question is whether a person is habitually intemperate, or whether he is a person of temperate habits, is mainly a question of fact, and is not susceptible of being defined with precision as matter of law.  As was said by Mr. Justice Field in *Insurance Company* v. *Foley* (105 U. S., at page 354), "when we speak of the habits of a person, we refer to his customary conduct, to pursue which he has acquired a tendency, from frequent repetition of the same acts"; but neither he nor any other judge, so far as we know, has ever undertaken to say how frequently the act in question must be repeated in order to generate a habit of doing such act.  So, in the case of *State* v. *Hathcock* (20 S. C., 419), where a laborer, employed in working upon the road-bed of a railroad used in transporting the mail, passengers, and freight, was indicted for failing to work on a public highway, and interposed as his defence the fact that his employment constituted a "justifiable excuse," which was overruled, this court held that there being no definition of what was a justifiable excuse in such cases, it could not be said there was any error of law in the ruling below.  The Chief Justice, in delivering the opinion of the court, uses this language, which, it seems to us, is applicable to the question under consideration : "The difficulty in this case is that we find no law, either statutory or otherwise, declaring what facts will constitute a justifiable excuse in cases like these, and, consequently, we have no rule by which to test the facts relied on by the appellants, and to determine whether or not, as matter of law, they make out a justifiable excuse."  So, here, we may say that we find no law defining the terms, "habitual carnal intercourse," and hence, even assuming that the Circuit Judge declined altogether to define those terms, we cannot say that there was any error of law in omitting to do that which the law had failed to furnish him any means of doing.

The fourth ground of appeal imputes error to the Circuit Judge in overruling appellant's objection to being tried in the absence of his co-defendant, the offence being joint and the two being jointly indicted.  Certainly, the fact that these two parties were jointly indicted, is not sufficient to forbid the trial of one without the presence of the other; for this would lead to the extraordinary (not to use any harsher term) result, that where two or more per-

sons commit any crime, however atrocious it may be, for which they are jointly indicted, the escape of one by eluding arrest affords absolute immunity to all the rest. The books, however, are full of cases which show that the law is not subject to such a reproach. We cannot think, therefore, that the distinguished counsel for appellant lays any stress upon the fact, that these two parties were jointly indicted, but must suppose that he bases this ground rather upon the fact that the offence charged is of such a nature as that it cannot be committed by one person, but must, necessarily, be participated in by another, and hence it is necessary that the two must be tried together, as neither one alone can commit the offence charged.

The authorities show that this position cannot be sustained. In *Commonwealth* v. *Bakeman* (131 Mass., 577 ; *S. C.*, 41 Am. Rep., 248), it was held that on an indictment against a man and a married woman for adultery, the man alone may be convicted, although the woman was too drunk to consent to the intercourse, and could not, therefore, be convicted. If this be so, then, surely, either party might be tried alone. So, in *State* v. *Ellis* (74 Mo., 385 ; *S. C.*, 41 Am. Rep., 321), it was held, that, under an indictment for incest, similar in this respect to adultery, one party having knowledge and the other being ignorant of the relationship, the former may be convicted and the latter acquitted. Again, in *Alonzo* v. *State* (15 Tex. Ct. App., 378 ; *S. C.*, 49 Am. Rep., 207), where the authorities are reviewed, it was held, that where the parties were jointly indicted for adultery and severed on the trial, the woman being tried first and acquitted, that did not operate as an acquittal of the man, and his plea in bar on that ground was overruled. It appears from the opinion in that case, that there are two cases in North Carolina which hold the contrary, though the weight of authority is the other way. But the North Carolina cases concede that the parties may be tried separately.

In our own State, we have no authority, so far as we are informed, directly on this point, but we have cases which, in principle, it seems to us, are strictly analogous. Although it requires the coöperation of at least three persons to commit a riot, yet from the case of *The State* v. *Thackam* (1 Bay, 353), followed

by the cases of *State* v. *Calder and others* (2 McCord, 462), *State* v. *Jackson* (1 Speer, 13), down to the case of *The State* v. *Blair* (13 Rich., 93), it has uniformly been held that a white person with two or more slaves may commit a riot, and as the Court of General Sessions did not then have jurisdiction of offences committed by slaves, the white man might be tried alone by that court. Now, if the Court of Sessions could try a white man alone for a riot committed with the coöperation of his slaves, over whom that court had no jurisdiction on account of their *status*, we see no reason why the court in this case could not try the appellant alone when it had not acquired jurisdiction of his *particeps criminis*, she never having been arrested.

The point raised by the fifth ground of appeal is disposed of by what we have said in considering the fourth ground.

The sixth and seventh grounds, which complain of error in receiving in evidence the resolutions of the public meeting and the appellant's letter in response thereto, may be considered together. Indeed, so far as the sixth ground is concerned, the "Case," as settled by the Circuit Judge, which is, of course, conclusive here, precludes the appellant from raising the question as to the admissibility of the resolutions, for it there appears that they were put in without objection. But as the counsel for appellant seems so earnestly impressed with the conviction that injustice (unintentional, of course) has been done him, in representing that he assented to the introduction of the resolutions in evidence, we will consider the question, as if the objection had been interposed at the proper time.

We do not suppose there can be a doubt that, if the persons composing the public meeting, or some of them, had gone to the appellant and verbally made to him the statements embodied in the resolutions, to which he had verbally replied in the terms of his letter, it would have been competent to prove what passed between the parties, provided the statements made by defendant were not extorted from him by something amounting to the legal idea of duress. If so, then we are unable to perceive why the communications, which happened to be in writing, should not be quite as good, if not better, testimony than the verbal statements.

The question then recurs, whether the letter was extorted from

appellant by duress. The Circuit Judge has found that it was not, and we think the testimony fully sustains his finding. The appellant was not under arrest at the time, and none was then threatened. The parties to whom the communication was made, were not shown to be officers of the law ; and when we find that he made the same admission, in a more pointed and distinct form to his brother in-law, who it is not pretended practised any coercion, either by exciting his hopes or fears, we cannot doubt that the letter was not extorted from the defendant by the use of any such means as would forbid its introduction in evidence.

In the argument here, counsel for appellant has raised another question, which, though not presented by any of the grounds of appeal, he claims to be a question of jurisdiction, which may be raised at any time. The point, as we understand it, is that, inasmuch as the indictment fails to charge that the defendants were guilty of habitual carnal intercourse with each other *"without living together,"* there is no charge of any criminal offence of which the court could take jurisdiction. This, it seems to us, raises rather a question as to the sufficiency of the indictment than a question of jurisdiction. The indictment purports to charge the offence of adultery, of which the court below unquestionably had jurisdiction ; and if the charge is defectively made, the objection should have been taken by motion to quash the indictment, or by a motion in arrest of judgment, and not by a plea to the jurisdiction of the court. So far as the record shows, no such objection was taken in the court below, and the question whether there is any defect in the indictment is not, strictly speaking, properly before us.

It is stated, however, in the "Case," that a motion in arrest of judgment was made and overruled by the Circuit Judge, and though the ground of such motion does not appear, we are willing to assume, in favor of liberty, that it was upon the ground that the words, "without living together," were omitted from the indictment. In *State* v. *Padgett* (18 S. C., 321), it is said : "The rule in regard to indictments framed to cover offences created by statute, is that the offence should be set forth with clearness and certainty, and must be so described, if not in the very words of the statute, as to bring it substantially within the provisions of

the statute." Under this rule, and especially under the cases cited to support it, we think it clear that the omission from the indictment of the words, "without living together," does not vitiate the indictment. They do not constitute any one of the elements of the offence denounced by the statute. The offence consists in "habitual carnal intercourse" between a man and a woman, one of whom is lawfully married to another person, whether they live together or not; and those words were inserted in the statute simply for the purpose of avoiding any inference, which might otherwise have been drawn from the preceding words of the statute, that the offence would not be complete unless the parties lived together. As is said by O'Neall, J., in *State* v. *Schroder* (3 Hill, 64), the omitted words "do not enter into the statutory definition of the offence: they are merely descriptive of the persons by whom the offence may be committed." See, also, *State* v. *Cunningham* (2 Speer, 254), where similar language is used, by the same eminent judge, in reference to the omission of the words, "any person resident in, or being a citizen of this State," found in the duelling act, from an indictment under that act. It seems to us, therefore, that the objection could not have been sustained, even if made the basis of a motion in arrest of judgment.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.