## 19151

The STATE, Respondent, v. James POLLARD, Appellant

(179 S. E. (2d) 21)

*Messrs. H. F. Partee, William T. Toal,* and *Grover S. Parnell,* of Greenville, *for Appellant,*

*B. O. Thomason, Jr., Esq., Solicitor,* of Greenville, *for Respondent,*

January 13, 1971.

Moss, Chief Justice.

James Pollard, Jr., the appellant herein, was indicted by the grand jury of Greenville County, South Carolina, at the 1969 May Term of the Court of General Sessions, and

charged with the murder of Patricia Clinkscales Pollard, his wife. The appellant was tried at the 1970 May Term of General Sessions Court before the Honorable Frank Eppes, and a jury, resulting in his conviction of manslaughter, and a sentence of twenty-five years imprisonment. The appellant made motions for a mistrial and a new trial, both of which were denied. This appeal followed.

The record reveals that Patricia C. Pollard died of multiple gunshot wounds during the night of January 3, 1969, in her Greenville apartment where she lived with the appellant and her son, one Bobby Joe Clinkscales. It appears that her son discovered his mother's body at approximately 1:35 A.M., January 4, 1969, and called the Greenville City Police Department for assistance. Two officers responded to the call and during the course of their investigation at the Pollard apartment they were advised to look for the appellant and a .22 caliber rifle allegedly used to take the life of the deceased. After the officers had completed this initial investigation, a police alert for the appellant was posted.

The appellant was arrested in Hendersonville, North Carolina, during the early morning hours of January 4, 1969, and a .22 caliber rifle was found in the trunk of his automobile. The evidence which led to the appellant's arrest can be best shown by the testimony offered by one Judy Jackson, the daughter of the appellant but not related to the deceased, who testified on behalf of the State.

This witness testified that sometime between 8:30 and 9:00 o'clock P.M. on January 3, 1969, the appellant came to her home in Greenville, South Carolina, where she lived with her mother, and asked her to accompany him to a local store for the purpose of cashing a check. She agreed to go and the two of them drove in the appellant's car to a nearby store where the appellant succeeded in getting a check cashed. After leaving the store, the appellant proceeded to drive north on Highway 25 in the direction of North Carolina,

refusing several requests made by the witness that she be returned to her home in Greenville. She further stated that after they had been driving for some time, the appellant asked her if she could keep a secret, to which she gave an affirmative reply, and he then told her that he had shot his wife eight times because she wanted to divorce him. She further testified that she noticed a rifle on the floor of the backseat and that later the appellant put the rifle in the trunk of the car.

She said when they reached Hendersonville, North Carolina, they stopped at a Holiday Inn Motel and there, after registering, occupied separate rooms. When she was alone in her room she stated that she called the motel manager and asked him to get in touch with the police in order that they might assist her in getting back to Greenville, South Carolina.

Shortly after her call, two officers from the Henderson County, North Carolina Sheriff's Department arrived at her motel room and she informed them of her desire to return to Greenville, South Carolina, as the appellant had brought her to Hendersonville against her will. She also related to them the story the appellant had told her concerning the shooting of his wife and that she believed a rifle was in the trunk of his car. These officers then contacted the Greenville City Police Department and received information that the appellant was being sought in connection with the death of his wife and, based on such information, they took the appellant into custody and placed him under arrest.

After the appellant's arrest he was taken to the office of the Sheriff of Henderson County, and there an FBI agent gave him the warnings required by *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694, 10 A. L. R. (3d) 974, and thereafter he signed a form waiving his constitutional rights. After receiving the Miranda warnings, the FBI agent asked the appellant's permission to search his car which had been brought to the station. The appellant,

pursuant to such request, and this appears by undisputed evidence, authorized the officers to search his automobile and gave them his keys to it. In the course of the search which followed, a .22 caliber rifle was found in the trunk of the appellant's car and such was taken into possession by the searching officers. The police officers from Greenville, South Carolina, later came to Hendersonville and returned the appellant, along with the aforementioned rifle, to Greenville County.

During the course of the appellant's trial in the lower court the State introduced into evidence the above-mentioned rifle over the appellant's objection that the rifle was inadmissible because it was a product of an illegal search. The State, prior to introducing this rifle, offered testimony that the appellant freely consented to the search of his automobile.

The appellant now contends that his conviction should be set aside or a new trial granted because: (1) The warnings given the appellant were so inadequate that he could not have knowingly and voluntarily given permission to search his car; and (2) The court erred in failing to conduct a hearing out of the presence of the jury to determine whether the appellant voluntarily and knowingly gave his consent to the search of his car.

Where undisputed evidence shows that the appellant had authorized officers to examine his automobile and had given them the keys to it, the seizure of the rifle from the trunk of the automobile did not result from illegal search. The evidence here is undisputed and uncontradicted that the appellant voluntarily and knowingly consented to the search of his automobile by the officers. Since the evidence was all one way and the defendant did not request that he be allowed to testify or to offer other evidence in the absence of the jury, the court's failure to conduct an independent hearing on this issue was not error.

In the case of *State v. Sanders,* 234 S. C. 233, 107 S. E. (2d) 457, it appears that the defendant while driving his

automobile, there being testimony that he was under the influence of alcohol at the time, had a collision resulting in the death of another person. Upon appeal to this court the defendant raised the question of whether the trial judge was in error in permitting the State to introduce into evidence the results of a chemical analysis of his blood taken shortly after the accident. The appellant contended that the taking of his blood without his consent to be analyzed for alcohol content violated his constitutional rights. The evidence shows that the defendant was asked by an officer if he would submit to a blood test, to which he made no reply, but held out his arm for the needle and the blood sample was taken by a nurse. Under the facts, we held that the evidence did not warrant the inference that the defendant's blood sample was taken without his consent and such evidence was properly admitted on trial.

In *State v. Guest,* 118 S. C. 130, 110 S. E. 112, we held that where a defendant, when his automobile was stopped by the officers admitted that he had whiskey therein, and voluntarily gave the officers the key to the rear compartment in which he had the whiskey, evidence of his confession and of the results of the search were admissible and did not violate his constitutional rights relating to unreasonable search.

In the two last cited cases this court recognized the principle that an individual may waive any provision of the Constitution intended for his benefit including the immunity from unreasonable searches and seizures; and where such immunity has been waived and consent given to a search, an individual cannot thereafter complain that his constitutional rights have been violated. *State v. Colson,* 274 N. C. 295, 163 S. E. (2d) 376, and *State v. Virgil,* 276 N. C. 217, 172 S. E. (2d) 28.

The appellant contends that he was not advised of his rights with regard to the search of his automobile or that he knew the consequences of his consent to such search. This same question was before the North Carolina

Supreme Court in *State v. Virgil,* 276 N. C. 217, 172 S. E. (2d) 28, and the disposition of the question made there is appropriate here. We quote the following from the cited case:

"Warnings required by Miranda are inapplicable to searches and seizures, and a search by consent is valid despite failure to give such warnings prior to obtaining consent. It was so held in *State v. Oldham,* 92 Idaho 124, 438 P. (2d) 275; *People v. Trent,* 85 Ill. App. (2d) 157, 228 N. E. (2d) 535; *State v. McCarty,* 199 Kan. 116, 427 P. (2d) 616; *Lamot v. State,* 2 Md. App. 378, 234 A. (2d) 615; *State v. Forney,* 182 Neb. 802, 157 N. W. (2d) 403, cert. den., 393 U. S. 1044, 89 S. Ct. 640, 21 L. Ed. (2d) 593. We adhere to that view. Furthermore, appellant has cited no decision nor have we found any, holding that officers investigating a crime are required by the Federal Constitution to preface a request to search premises with advice to the occupant that he does not have to consent to a search, that he has a right to insist on a search warrant, and that the fruits of the search may be used as evidence against him."

In *State v. McCarty, supra,* the Supreme Court of Kansas said:

"Miranda deals only with the compulsory self-incrimination barred by the Fifth Amendment; not with the unreasonable search and seizure proscribed by the Fourth Amendment. There is an obvious distinction between the purposes to be served by these two historic sections of the Bill of Rights. The Fifth Amendment prohibits the odious practice of compelling a man to convict himself; the Fourth guards the sanctity of his home and possessions as those terms have been judicially interpreted. An indispensable element of compulsory self-incrimination is some degree of compulsion. The essential component of an unreasonable search and seizure is some sort of unreasonableness.

"No responsible court has yet said, to our knowledge, that before a valid voluntary consent to a search can be

given, the person consenting must first be warned that whatever is discovered through the search may be used as evidence against him. We decline to be the first judicial body to espouse so dubious a theory."

The appellant contends that the trial judge committed error in refusing a hearing out of the presence of the jury as to whether he voluntarily and knowingly gave his consent to the search of his automobile.

The appellant relies on *State v. Chasteen,* 228 S. C. 88, 88 S. E. (2d) 880, and *State v. Harrison,* 236 S. C. 246, 113 S. E. (2d) 783, where we held that in conducting the preliminary inquiry as to the voluntariness of a confession, the better practice is to conduct such examination in the absence of the jury, but where the confession is found to be admissible, the failure to do so is not reversible error.

It is our conclusion that the Chasteen and Harrison cases sustain the action of the trial judge in overruling the objection made by the appellant. Since he found that appellant's consent to the search was voluntary, there was no reversible error in having heard the testimony thereabout in the presence of the jury.

It appears from the record that the sole testimony before the trial judge was that the appellant voluntarily and knowingly gave his consent to the search of his automobile. This being true, there was no error in the admission of such testimony.

The exceptions of the appellant are overruled and the judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.