610 S.E.2d 494

The STATE, Respondent,

v.

Ricky Dennis GENTRY, Appellant.

No. 25949.

Supreme Court of South Carolina.

Heard May 25, 2004.
Decided March 7, 2005.

94

John Dennis Delgado and Kathrine Haggard Hudgins, both of Columbia, for appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, and Assistant Attorney General Deborah R.J. Shupe, all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg, for respondent.

Justice MOORE:

Appellant appeals his convictions for accessory before the fact of armed robbery and accessory before the fact of assault and battery with intent to kill (ABIK), claiming the trial court was without subject matter jurisdiction to hear the accessory charges against him and claiming the trial court erred by failing to grant a directed verdict on the accessory charges. We affirm.

## PROCEDURAL BACKGROUND/FACTS

On March 31, 2001, Shawn Bobo was shot to death outside his home. His wife, Shanna, was shot four times, but survived her injuries. Appellant was indicted for murder, ABIK, armed robbery, accessory before the fact to murder, accessory before the fact to armed robbery, and accessory before the fact to ABIK. Appellant's accessory charges related to the robbery and shooting of Shawn. Following a trial, the jury found appellant guilty of accessory before the fact to armed robbery and accessory before the fact to ABIK. He was found

not guilty of the remaining charges. Appellant was sentenced to thirty years imprisonment for accessory before the fact to armed robbery and to twenty years, concurrent, for accessory before the fact to ABIK.

The State presented evidence appellant and several others, including Tommie Smith (Tommie), discussed robbing the victim of cocaine. One of those present, Stanley Moore (known as Rico), testified appellant said he would kill the victim and then pulled out his gun of which Tommie took possession. Rico testified he, appellant, Tommie, and Michael Osbey (Osbey) all rode in the car to the victim's house. Rico testified the plan, which appellant had agreed to, was for Osbey to come in and shoot everyone. Appellant and Tommie talked to the victim and went inside the victim's house. A few minutes later, appellant ran out the front door and motioned Osbey to come inside. Appellant, Tommie, and Osbey later ran to get in the car. Tommie and Osbey had the guns and appellant had a bag of cocaine.

Shanna testified she was shot four times by Tommie and Osbey. She stated appellant was not in the kitchen during a struggle for the gun between Tommie and the victim. She further stated she stabbed at appellant behind the recliner in the living room.

In appellant's first statement to police, he indicated he was present when Tommie pulled a gun on the victim and when the victim and Tommie began struggling for the gun. Appellant stated he was stabbed by Shanna and that, as he was running out of the front door, he saw Osbey running towards the back door. In his second statement to police, appellant admitted he went to the victim's house to rob him of cocaine and that the plan was for Tommie to pull out a gun while appellant took the cocaine. After leaving the house, appellant heard shots fired when he was trying to catch up with Rico. He stated that when Osbey and Tommie got in the car, Osbey had the cocaine. They never split up the cocaine.

At the close of the State's case, appellant moved for a directed verdict on the accessory charges because the State had failed to prove appellant was not present when the crimes

were committed.[1]  The trial court denied the motion because there was conflicting evidence on the presence issue.

During appellant's case, Tommie testified he initiated the plan of robbing the victim and that appellant agreed to the plan and supplied the weapons.  The plan was for appellant to pretend he was buying drugs.  Appellant was present when Tommie pulled the gun on the victim and told the victim they were going to take the drugs.  Tommie and the victim began to struggle for the gun and Shanna stabbed him.  Then, Osbey came in and started shooting.  Tommie testified appellant left before the shooting started.  However, appellant came back inside the house after Osbey had entered and grabbed the cocaine.  The three left the house together with over nine ounces of cocaine, worth approximately $9,000.

Appellant testified he agreed with Tommie to purchase cocaine from the victim and later agreed to rob the victim.  After they passed the victim's house, appellant testified he told the others that he did not want to rob the victim.  Appellant testified he agreed to buy the drugs as long as Tommie did not try to rob the victim.  Tommie assured appellant he would not, but Tommie pulled out a gun as the victim was taking out the cocaine.  Tommie and the victim began to struggle and appellant hid behind a couch to stay out of the way of the gun.  Shanna ran by him and cut him on his back. Appellant ran out the front door.  Osbey was already getting out of the car.  Rico was pulling out of the driveway and appellant waved his hand in an attempt to have Rico stop.  By the time he got to the edge of the yard, which is near the street, appellant heard a series of shots.  He continued down the street and heard more shots.  When Osbey later entered the car, he had the cocaine.

At the close of appellant's case, appellant renewed his motion for a directed verdict.  The motion was denied.  The jury found appellant guilty of accessory before the fact of armed robbery and accessory before the fact of ABIK.

---

1. The elements which must concur to justify the conviction of one as an accessory before the fact are as follows: (1) that the defendant advised and agreed, or urged the parties or in some way aided them, to commit the offense; (2) *that the defendant was not present when the offense was committed;* and (3) that the principal committed the crime.  *State v. Smith,* 316 S.C. 53, 447 S.E.2d 175 (1993) (emphasis added).

## ISSUES

I. Did the indictments' failure to allege the element "absence from the scene of the crime" deprive the trial court of subject matter jurisdiction to hear the accessory before the fact charges?

II. Did the trial court err by failing to direct a verdict for appellant on the charges of accessory before the fact to armed robbery and accessory before the fact to ABIK when no evidence was presented that appellant was absent from the scene of the crime?

III. Did the trial court err by failing to direct a verdict in appellant's favor on accessory before the fact to armed robbery when the alleged subject of armed robbery was a quantity of illegal narcotics?

## DISCUSSION

### I. Subject Matter Jurisdiction

Appellant argues the accessory before the fact indictments deprived the trial court of subject matter jurisdiction because the indictments did not allege the element "absence from the scene of the crime." Before addressing the specific facts of this case, we first address the confusion that has arisen in past jurisprudence between the sufficiency of the indictment and the subject matter jurisdiction of the trial court.

Recently, the United States Supreme Court, in *United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), held that a defective indictment does not deprive a court of jurisdiction.[2] The Supreme Court explained that *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), was the progenitor of the view that a defective indictment deprived a court of its jurisdiction. *Bain*, however, is "the product of an era in which [the Supreme Court]'s authority to review criminal convictions was greatly circumscribed. At the time it was decided, a defendant could not obtain direct review of his criminal conviction in the Supreme Court." *Cotton*, 535 U.S.

---

2. Cotton argued that because his federal indictment omitted the threshold levels of drug quantity that enhances the statutory maximum sentence, the trial court was without jurisdiction to impose a sentence for an offense not charged in the indictment.

at 629–630, 122 S.Ct. 1781.   As a result, the Supreme Court's desire to correct obvious constitutional violations led to a somewhat expansive notion of jurisdiction, which was more a fiction than anything else.   *Id.* at 630, 122 S.Ct. 1781.

The Supreme Court further stated that *Bain's* elastic concept of jurisdiction is not what the term jurisdiction means today, *i.e.* the courts' statutory or constitutional power to adjudicate the case.   *Id.* "This latter concept of subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.   Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised [below]."   *Id.*

The Supreme Court stated that its cases after *Bain* have held that a defective indictment does not affect the jurisdiction of the trial court to determine the case presented by the indictment.   The Supreme Court then overruled *Bain* to the extent it held a defective indictment deprives a court of jurisdiction.

■ Turning to South Carolina jurisprudence, we note this Court has held that subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong, *Pierce v. State,* 338 S.C. 139, 526 S.E.2d 222 (2000); and that issues related to subject matter jurisdiction may be raised at any time.   *Brown v. State,* 343 S.C. 342, 540 S.E.2d 846 (2001).   The lack of subject matter jurisdiction may not be waived, even by consent of the parties, and should be taken notice of by this Court.   *Id.* However, as was done by the Supreme Court in *Bain,* this Court broadened the meaning of jurisdiction in *State v. Munn,* 292 S.C. 497, 357 S.E.2d 461 (1987).   Prior to *Munn,* the rule was that any objection to the sufficiency of the indictment, *i.e.* that the indictment was defective, had to be made before the jury was sworn.   *See State v. Young,* 243 S.C. 187, 133 S.E.2d 210 (1963)[3] (challenge directed to the sufficiency of the indictment rather than to the jurisdiction of the Court to try the offense charged needed to be raised by a motion to quash before the jury was sworn).   This rule was effectively altered by the *Munn* decision.

---

**3.**   *Cert. denied,* 379 U.S. 868, 85 S.Ct. 85, 13 L.Ed.2d 71 (1964).

In *Munn*, citing 41 Am. Jur. 2d *Indictments and Informations*, § 299 (1968), we stated that defects in the indictment that are of such a fundamental character as to make the indictment wholly invalid are not subject to waiver by a defendant. We concluded that, subject to certain minor exceptions, the trial court lacks subject matter jurisdiction to convict a defendant for an offense when there is no indictment charging him with that offense when the jury was sworn. This language conflated the meaning of subject matter jurisdiction and mixed two separate questions, *i.e.* whether the trial court has the power to hear a case and whether the indictment is sufficient.[4]

While our broadened definition of subject matter jurisdiction occurred more recently than during the time of *Bain*,[5] we find the Supreme Court's comments in *Cotton* instructive. As noted by the Supreme Court in *Cotton* and the Missouri Supreme Court in *State v. Parkhurst*, 845 S.W.2d 31 (Mo.1992), subject matter jurisdiction of the circuit court and the sufficiency of the indictment are two distinct concepts and the blending of these concepts serves only to confuse the issue. Circuit courts obviously have subject matter jurisdiction to try criminal matters. To end the confusion that was created by *Munn*, we now conclusively hold that if an indictment is challenged as insufficient or defective, the defendant must raise that issue before the jury is sworn and not afterwards. *See* S.C.Code Ann. § 17–19–90 (2003) ("Every objection to any indictment for any defect apparent on the face thereof shall be taken by demurrer or on motion to quash such indictment before the jury shall be sworn and not afterwards."). However, a defendant may for the first time on

---

4. *See also Mathis v. State*, 355 S.C. 87, 584 S.E.2d 366 (2003) (in finding court lacked subject matter jurisdiction to convict petitioner of first degree burglary, this Court stated S.C.Code Ann. § 17–19–90 (2003) applies to indictment defects that do not affect the subject matter jurisdiction of the circuit court and does not limit a court's consideration of indictment defects that affect subject matter jurisdiction, no matter when such issues are raised).

5. *But see State v. Carroll*, 30 S.C. 85, 8 S.E. 433 (1889) (implying question of jurisdiction raised where indictment missing element of the offense).

appeal raise the issue of the trial court's jurisdiction to try the class of case of which the defendant was convicted.[6]

As stated in *State v. Faile*, 43 S.C. 52, 59–60, 20 S.E. 798, 801 (1895), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991) (citations omitted):

> The indictment is the charge of the state against the defendant, the pleading by which he is informed of the fact, and the nature and scope of the accusation. When that indictment is presented, that accusation made, that pleading filed, the accused has two courses of procedure open to him. He may question the propriety of the accusation, the manner in which it has been presented, the source from which it proceeds, and have these matters promptly and properly determined; or, waiving them, he may put in issue the truth of the accusation, and demand the judgment of his peers on the merits of the charge. If he omits the former, and chooses the latter, he ought not, when defeated on the latter,—when found guilty of the crime charged,—to be permitted to go back to the former, and inquire as to the manner and means by which the charge was presented.

The indictment is a notice document. A challenge to the indictment on the ground of insufficiency must be made before the jury is sworn as provided by § 17–19–90. If the objection is timely made, the circuit court should judge the sufficiency of the indictment by determining whether (1) the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer and

---

6. We note that a presentment of an indictment or a waiver of presentment is not needed to confer subject matter jurisdiction on the circuit court. However, an indictment is needed to give *notice* to the defendant of the charge(s) against him. *See* S.C. Const. Art. I, § 11 ("No person may be held to answer for any crime the jurisdiction over which is not within the magistrate's court, unless on a presentment or indictment of a grand jury of the county where the crime has been committed ..."); S.C.Code Ann. § 17–19–10 (2003) ("No person shall be held to answer in any court for an alleged crime or offense, unless upon indictment by a grand jury...."). A defendant must object if he is not presented with the indictment or if he has not waived his right to presentment. If the defendant does not object, he is deemed to have waived the right to presentment. *See State v. Pollard*, 255 S.C. 339, 179 S.E.2d 21 (1971) (individual may waive any provision of the Constitution intended for his benefit).

whether he may plead an acquittal or conviction thereon; and (2) whether it apprises the defendant of the elements of the offense that is intended to be charged. *State v. Wilkes*, 353 S.C. 462, 578 S.E.2d 717 (2003); *see also* S.C.Code Ann. § 17-19-20 (2003) (sufficiency of indictment). In determining whether an indictment meets the sufficiency standard, the court must look at the indictment with a practical eye in view of all the surrounding circumstances. *State v. Adams*, 277 S.C. 115, 283 S.E.2d 582 (1981). Further, whether the indictment could be more definite or certain is irrelevant. *State v. Knuckles*, 354 S.C. 626, 583 S.E.2d 51 (2003).

We note that our holding today, while overruling several cases,[7] is in line with modern jurisprudence.[8]

█ Addressing the instant case, appellant argues the indictments' failure to allege the element "absence from the scene of the crime" deprives the trial court of subject matter jurisdiction to hear the accessory before the fact charges. Because appellant did not raise the sufficiency of the indictments before the jury was sworn, he cannot now raise this issue on appeal. The issue is not preserved for our review.

## II. Absence From Scene of the Crime

Appellant argues the trial court erred by failing to direct a verdict on the accessory charges when no evidence was presented that he was absent from the scene of the crime.

█ A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. Curtis*, 356 S.C. 622, 591 S.E.2d 600 (2004). In

---

7. See Appendix.

8. Few jurisdictions combine the concepts of subject matter jurisdiction of the trial court and the sufficiency of the indictment. *See, e.g., Cole v. State*, 842 So.2d 605 (Ala.2002) (when first-degree robbery indictment fails to set forth essential element of offense of second-degree robbery, insufficiency of factual basis for guilty plea to second-degree robbery may be attacked on basis court lacked subject matter jurisdiction to accept the plea); *State v. Bullock*, 154 N.C.App. 234, 574 S.E.2d 17 (2002) (when indictment does not allege essential elements of crime charged, trial court does not have subject matter jurisdiction); *State v. Presler*, 112 Ohio App. 437, 176 N.E.2d 308 (1960) (court did not have subject matter jurisdiction where indictment did not state element of the offense).

reviewing a motion for directed verdict, the trial judge is concerned with the existence of the evidence, not with its weight. *Id.* On appeal from the denial of a directed verdict, an appellate court must view the evidence in the light most favorable to the State. *Id.* If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case was properly submitted to the jury. *Id.*

■■■ Regarding the accessory before the fact to armed robbery charge, the testimony indicates appellant was present during the time Tommie pulled a gun on the victim and informed the victim they were going to take the cocaine. Rico testified appellant left the victim's house with the cocaine indicating appellant assisted in completing the armed robbery. Further, appellant, in his first statement to police, did not mention the cocaine and, in his second statement, he stated that he was in the car with Rico when Osbey entered the car with the cocaine. Therefore, there was conflicting evidence whether appellant was present during the taking of the cocaine from the victim's possession.[9]

■■■ Regarding the crime of accessory before the fact to ABIK, Rico testified appellant motioned Osbey to enter the victim's home pursuant to the plan for Osbey to come in and shoot everyone. Rico also indicated appellant was present during the shooting. However, Tommie and appellant testified appellant was *not* present during the shooting.

Given the conflicting evidence on both charges, the trial court appropriately submitted the charges to the jury and properly denied the directed verdict motion. *See State v. Curtis, supra* (defendant not entitled to directed verdict when State has produced evidence of offense charged; if there is any direct evidence or substantial circumstantial evidence reasonably tending to prove guilt of accused, Court must find case was properly submitted to jury).

---

9. Armed robbery occurs when a person commits robbery, which is defined as the felonious or unlawful taking of money, goods, or other personal property of any value from the person of another or in his presence by violence or by putting such person in fear, while armed with a deadly weapon. *Joseph v. State,* 351 S.C. 551, 571 S.E.2d 280 (2002).

### III. Illegal Drugs as Subject of Armed Robbery

■ Appellant argues the trial court erred by failing to direct a verdict in his favor on accessory before the fact to armed robbery where the alleged subject of the armed robbery was a quantity of illegal narcotics. However, illegal drugs may be the subject of an armed robbery. *See, e.g., State v. Oliver,* 334 N.C. 513, 434 S.E.2d 202 (1993) (drugs may be subject of armed robbery); *Guy v. State,* 108 Nev. 770, 839 P.2d 578 (1992), *cert. denied,* 507 U.S. 1009, 113 S.Ct. 1656, 123 L.Ed.2d 275 (1993) (drugs can be subject of robbery).

Appellant also argues the State did not introduce any testimony regarding the value of the narcotics. However, Tommie testified the cocaine taken from the victim's home had a value of approximately $9,000. Accordingly, the State introduced evidence that something of value had been taken from the victim.

**AFFIRMED.**

TOAL, C.J., WALLER and BURNETT, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

### APPENDIX

While perhaps not a complete listing of all the cases affected by this decision, the following cases are overruled to the extent they combine the concept of the sufficiency of an indictment and the concept of subject matter jurisdiction, *i.e.* a trial court's power to hear a charge:

1. *Koon v. State,* 358 S.C. 359, 595 S.E.2d 456 (2004).

2. *Thompson v. State,* 357 S.C. 192, 593 S.E.2d 139 (2004).

3. *Mathis v. State,* 355 S.C. 87, 584 S.E.2d 366 (2003).

4. *State v. Knuckles,* 354 S.C. 626, 583 S.E.2d 51 (2003).

5. *Cohen v. State,* 354 S.C. 563, 582 S.E.2d 403 (2003).

6. *Cutner v. State,* 354 S.C. 151, 580 S.E.2d 120 (2003).

7. *State v. Wilkes,* 353 S.C. 462, 578 S.E.2d 717 (2003).

8. *Hooks v. State,* 353 S.C. 48, 577 S.E.2d 211 (2003).

9. *Joseph v. State,* 351 S.C. 551, 571 S.E.2d 280 (2002).

10. *State v. Parker,* 351 S.C. 567, 571 S.E.2d 288 (2002).

11. *Odom v. State,* 350 S.C. 300, 566 S.E.2d 528 (2002).

12. *State v. Primus,* 349 S.C. 576, 564 S.E.2d 103 (2002).

13. *State v. Timmons,* 349 S.C. 389, 563 S.E.2d 657 (2002).

14. *State v. Owens,* 346 S.C. 637, 552 S.E.2d 745 (2001).

15. *State v. Elliott,* 346 S.C. 603, 552 S.E.2d 727 (2001).

16. *State v. Lynch,* 344 S.C. 635, 545 S.E.2d 511 (2001).

17. *Brown v. State,* 343 S.C. 342, 540 S.E.2d 846 (2001).

18. *State v. McFadden,* 342 S.C. 629, 539 S.E.2d 387 (2000).

19. *Locke v. State,* 341 S.C. 54, 533 S.E.2d 324 (2000).

20. *Knox v. State,* 340 S.C. 81, 530 S.E.2d 887 (2000).

21. *Weinhauer v. State,* 334 S.C. 327, 513 S.E.2d 840 (1999).

22. *Browning v. State,* 320 S.C. 366, 465 S.E.2d 358 (1995).

23. *Johnson v. State,* 319 S.C. 62, 459 S.E.2d 840 (1995).

24. *Hopkins v. State,* 317 S.C. 7, 451 S.E.2d 389 (1994).

25. *Slack v. State,* 311 S.C. 415, 429 S.E.2d 801 (1993).[10]

26. *State v. Evans,* 307 S.C. 477, 415 S.E.2d 816 (1992).

27. *State v. Munn,* 292 S.C. 497, 357 S.E.2d 461 (1987).

28. *State v. Beachum,* 288 S.C. 325, 342 S.E.2d 597 (1986).

29. *Summerall v. State,* 278 S.C. 255, 294 S.E.2d 344 (1982).

30. *State v. Langford,* 223 S.C. 20, 73 S.E.2d 854 (1953).

31. *State v. Hann,* 196 S.C. 211, 12 S.E.2d 720 (1940).

32. *State v. Lazarus,* 83 S.C. 215, 65 S.E. 270 (1909).

33. *State v. Campbell,* 361 S.C. 529, 605 S.E.2d 576 (Ct. App.2004).

34. *State v. Walton,* 361 S.C. 282, 603 S.E.2d 873 (Ct.App. 2004).

---

**10.** *Abrogated on other grounds by Simpson v. State,* 329 S.C. 43, 495 S.E.2d 429 (1998).

35. *State v. Gonzales,* 360 S.C. 263, 600 S.E.2d 122 (Ct. App.2004).

36. *State v. Perry,* 358 S.C. 633, 595 S.E.2d 883 (Ct.App. 2004).

37. *State v. Barnett,* 358 S.C. 199, 594 S.E.2d 534 (Ct.App. 2004).

38. *State v. Bryson,* 357 S.C. 106, 591 S.E.2d 637 (Ct.App. 2003).

39. *State v. Smalls,* 354 S.C. 498, 581 S.E.2d 850 (Ct.App. 2003).

40. *State v. Wright,* 354 S.C. 48, 579 S.E.2d 538 (Ct.App. 2003).

41. *State v. Bullard,* 348 S.C. 611, 560 S.E.2d 436 (Ct.App. 2002).

42. *State v. Hamilton,* 344 S.C. 344, 543 S.E.2d 586 (Ct. App.2001).

43. *In re Jason T.,* 340 S.C. 455, 531 S.E.2d 544 (Ct.App. 2000).

44. *State v. Ervin,* 333 S.C. 351, 510 S.E.2d 220 (Ct.App. 1998).

Justice PLEICONES dissenting:

I respectfully dissent.

I agree with the majority that the question of the sufficiency of an indictment is not a matter of subject matter jurisdiction, and that in this case the indictments, while flawed, were sufficient to confer jurisdiction. I write separately, however, because in my view the circuit court lacks subject matter jurisdiction to conduct a trial of a criminal charge where there has been no presentment of an indictment by the grand jury. *See State v. Evans,* 307 S.C. 477, 415 S.E.2d 816 (1992) (valid indictment or waiver of presentment prerequisite for circuit court's subject matter jurisdiction). Further, in my view, the circuit court lacks subject matter jurisdiction to accept a plea of guilty unless there has been a presentment or a written waiver of presentment. S.C. Const. art. I, § 11; *State v. Lazarus,* 83 S.C. 215, 65 S.E. 270 (1909); S.C.Code Ann. §§ 17–23–120 to –150 (1985); *compare e.g., State v. Mitchell,* 1

Bay (1 S.C.L.) 267 (1792) (S.C. Const. art. 3, § 2, required serious criminal cases come before the court of general jurisdiction "through the medium of a grand jury, by indictment").

In my view, the majority misapprehends the function of an indictment when it holds that its purpose is merely to serve as notice to the defendant of the charges against him. An indictment serves multiple functions: "to enable the accused to repel or rebut the charge, to protect him from a future prosecution for the same charge,[11] and to enable the court to pronounce its judgment." *State v. Halder,* 2 McCord (13 S.C. L.) 377 (1823). While it may be that the first and second reasons for requiring an indictment inure solely to the defendant's benefit, and therefore may be waived by him, the third requirement is for the benefit of the circuit court, and is not subject to waiver by the defendant. *Compare State v. Pollard,* 255 S.C. 339, 179 S.E.2d 21 (1971) (defendant may waive constitutional provision intended for his benefit). Further, unlike the other state constitutional provisions which benefit an accused,[12] Article I, § 11 contains a limitation on waiver: The last sentence of this section states "The General Assembly may provide for the waiver of an indictment by the accused." Pursuant to this grant of authority, the legislature has enacted statutory waiver provisions. S.C.Code Ann. §§ 17–23–120 through –150. In my opinion, we must honor the limitation on an accused's right to waive the requirements of this constitutional provision.[13] Finally, even if we were to find that a defendant might waive this constitutional requirement, such a waiver would be valid only if made knowingly, intelligently, and voluntarily. I am concerned about the increase in post-conviction filings that would result from our abandonment of the requirement of an indictment or a written waiver of presentment, the resulting appellate proceedings,

---

11. A claim of double jeopardy is ordinarily judged by comparing the allegations made in the second indictment with those made in the first. *E.g., State v. Shirer,* 20 S.C. 392 (1884).

12. *Compare* S.C. Const. art. VI, § 8, permitting governor to suspend certain public officers upon indictment, "or upon the waiver of such indictment if permitted by law...."

13. It is the right to waive presentment, as provided by statute, that is the personal right of the accused and he may waive only the place of its execution, not the execution itself. *State v. Evans, supra.*

and the inevitable grants of relief. I believe the limited resources of the judicial branch are better served by requiring compliance on the front end with this clear, unambiguous, and long-standing constitutional prerequisite to a criminal proceeding.[14]

I also disagree with the majority's decision to affirm the denial of appellant's directed verdict motions on the charges of accessory before the fact. I take a more expansive view of what constitutes presence at the scene than does the majority. Appellant accompanied the codefendants to the scene and entered the home with prior knowledge of their plan to commit a crime. "Presence at the scene by prearrangement to aid, encourage, or abet in the perpetration of the crime constitutes guilt as a principal." *State v. Leonard,* 292 S.C. 133, 355 S.E.2d 270 (1987). It is not necessary that the person participate in the actual crime or even observe it in order to be "present at the scene" and guilty as a principal. *See, e.g., State v. Gates,* 269 S.C. 557, 238 S.E.2d 680 (1977) (getaway driver guilty as principal in armed robbery). In my opinion, the evidence here is susceptible only of the inference that appellant was present at the scene aiding, encouraging, and/or abetting the codefendants, and therefore the directed verdicts should have been granted. *State v. Smith,* 316 S.C. 53, 447 S.E.2d 175 (1993) (absence from scene is element of accessory before the fact).

For the reasons given above, I respectfully dissent.

---

**14.** The Constitutional requirement that no man be tried on serious criminal charges save upon the grand jury's presentment of a true billed indictment has its roots in the English common law. As this Court acknowledged in 1932:

> The Grand Jury is of very ancient origin in the history of England ... it was at the time of the settlement of this country *an informing and accusing body only* ... And in the struggles which in those times arose in England between the powers of the King and the rights of the subject, it often stood as a barrier against persecution in his name.
> (italics in original)

*State v. Bramlett,* 166 S.C. 323, 164 S.E. 873 (1932).

The Grand Jury exists not merely to investigate and accuse, but acts as a curb on the unbridled power of the sovereign.