# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Frank James Rish, Sr., Petitioner,

v.

Kathy Cotney Rish, Respondent.

Appellate Case No. 2022-000320

———————

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———————

Appeal from Newberry County
Joseph C. Smithdeal, Family Court Judge

———————

Opinion No. 28223
Heard June 8, 2023 – Filed July 31, 2024

———————

## REVERSED IN PART

———————

Kenneth Philip Shabel, of Kennedy & Brannon, P.A., of
Spartanburg, for Petitioner.

Leslie Ragsdale Fisk, of Law Office of Rhett Burney,
P.A., of Simpsonville, and J. Edwin McDonnell, of
Campobello, both for Respondent.

———————

**JUSTICE FEW:** A 2003 divorce decree awarded Kathy Rish "nonmodifiable"
periodic alimony. In 2011 the family court reduced the award, and in 2018 it

terminated alimony. Kathy now argues the modification and termination orders are void because the family court lacked "subject matter jurisdiction" to modify the alimony award. We hold the family court always has subject matter jurisdiction to consider modifying alimony, even if it does not have the power to modify a particular "nonmodifiable" award. In this case, Kathy's failure to challenge the 2011 order on the basis of the nonmodifiable language in the 2003 divorce decree forfeited her right to do so later.

## I.       Background

Kathy and Frank Rish divorced in 2003 and agreed Frank would pay Kathy $650 per month in periodic alimony. The family court order approving the agreement provided the alimony is "nonmodifiable." In 2010, Frank filed an action seeking to modify his alimony obligation. At that time Kathy did not argue the alimony was nonmodifiable. When the family court reduced Frank's alimony payments to $550 per month in 2011, Kathy did not appeal or otherwise challenge the order. The 2011 order said nothing of that award being nonmodifiable.

In 2016, Frank sought to modify or terminate his alimony payments after he became physically unable to continue performing his job. In 2018, the family court terminated his alimony obligation, holding the 2011 order controlled and the alimony award was modifiable. Kathy filed a motion under Rules 59(e) and 60(b)(4) of the South Carolina Rules of Civil Procedure, arguing the family court lacked "jurisdiction" to modify the 2003 alimony award. Kathy asserted that because the 2003 divorce decree provided the alimony was "nonmodifiable" the court was without subject matter jurisdiction to later reconsider the award. The family court denied the motion.

Kathy appealed, and the court of appeals reversed. *Rish v. Rish*, 435 S.C. 681, 689-90, 868 S.E.2d 719, 723 (Ct. App. 2021). It held the family court lacked subject matter jurisdiction to modify the 2003 alimony award and vacated the 2018 order. 435 S.C. at 687, 868 S.E.2d at 722. The court of appeals also held "that [Kathy]'s acquiescence in the 2011 order for almost seven years was unreasonable under Rule 60(b)(4)'s reasonable time requirement," and it refused to vacate the 2011 order reducing alimony. 435 S.C. at 689-90, 868 S.E.2d at 723.

## II.     Power of the Family Court

This Court has recently corrected our prior cases that imprecisely and inaccurately referred to different procedural and substantive rules as limitations on a court's "subject matter jurisdiction." *See Allen v. S.C. Dep't of Corr.*, 439 S.C. 164, 170-71, 886 S.E.2d 671, 674 (2023) (clarifying the administrative law court does have subject matter jurisdiction over all inmate grievances, but it may grant relief only when the inmate is deprived of due process); *State v. Campbell*, 376 S.C. 212, 216, 656 S.E.2d 371, 373 (2008) (explaining that while a circuit court lacks the "power" to re-sentence a defendant after the term of court has ended, it is not for lack of "subject matter jurisdiction"); *State v. Gentry*, 363 S.C. 93, 101-03, 610 S.E.2d 494, 499-500 (2005) (holding a defective indictment does not deprive the circuit court of subject matter jurisdiction).

The particular confusion about the family court's subject matter jurisdiction over alimony modification likely stems from this Court's decision in *Moseley v. Mosier*, 279 S.C. 348, 306 S.E.2d 624 (1983).  In *Moseley* we overruled prior cases which held "that words of art make a major distinction in the operation of divorce law."[1] 279 S.C. at 353, 306 S.E.2d at 627.  After our decision in *Moseley*, "jurisdiction for all domestic matters, whether by decree or by agreement, . . . vest[ed] in the family court."  *Id.*  Unfortunately, the *Moseley* Court also stated the family court will have the power to modify any alimony award "unless the agreement unambiguously denies the court jurisdiction."  *Id.*

Since that statement, the court of appeals has often referred to the ability of the family court to modify an alimony award as a question of "subject matter jurisdiction."  *E.g.*, *Hammer v. Hammer*, 399 S.C. 100, 106, 730 S.E.2d 874, 877 (Ct. App. 2012) (citing *Moseley*, 279 S.C. at 353, 306 S.E.2d at 627).  In particular, the court of appeals has relied on subsection 20-3-130(G) of the South Carolina Code (2014) to find an alimony agreement could deprive the family court of

---

[1] Prior to *Moseley*, depending on the language used in an alimony agreement and court order, the family court could lack subject matter jurisdiction if the agreement was merely a contract.  *See McGrew v. McGrew*, 273 S.C. 556, 558, 257 S.E.2d 743, 744 (1979) (citing *Zwerling v. Zwerling*, 273 S.C. 292, 295, 255 S.E.2d 850, 852 (1979)).

jurisdiction over future modification.[2] *E.g.*, *Degenhart v. Burriss*, 360 S.C. 497, 500-01, 602 S.E.2d 96, 97-98 (Ct. App. 2004) (relying on § 20-3-130(G) and holding the agreement there "clearly denies the family court the jurisdiction to modify the agreement").

Today we correct our prior caselaw and hold that parties to an alimony award cannot remove future modification from the family court's jurisdiction. By statute,[3] the family court has exclusive jurisdiction to order spousal support and to modify its prior orders. S.C. Code Ann. § 63-3-530(A)(14), (25), (30) (2010). Frank's requests for modification in 2010 and for termination in 2016 fall within that "general class [of] proceedings," *Dove v. Gold Kist, Inc.*, 314 S.C. 235, 238, 442 S.E.2d 598, 600 (1994) (citation omitted), and thus the family court had subject matter jurisdiction over the requests. The provision in subsection 20-3-130(G) allowing parties to agree in a writing approved by the court that an alimony award will not be modifiable has no effect on jurisdiction. Rather, subsection 20-3-130(G) provides a substantive rule of law that restricts the power of the family court and removes its authority to modify alimony under the circumstances set forth in the subsection.

### III.    Subsection 20-3-130(G)

Having determined the family court did have jurisdiction to consider modifying alimony, we must decide whether subsection 20-3-130(G) nevertheless prevented the family court from modifying the 2003 divorce decree and terminating alimony in 2018. In this case, we hold it did not.

---

[2] Subsection 20-3-130(G) provides in part: "The parties may agree in writing if properly approved by the court to make the payment of alimony . . . nonmodifiable and not subject to subsequent modification by the court."

[3] The family court was created by the General Assembly, and its jurisdiction is provided by statute. S.C. Code Ann. §§ 63-3-10, -510, -530 (2010 & Supp. 2023). This Court, the court of appeals, and the circuit court, however, are empowered with jurisdiction provided by the Constitution of South Carolina. S.C. Const. art. V, §§ 1, 5, 9, 11. The General Assembly could have restricted the jurisdiction of the family court with subsection 20-3-130(G), however, such a restriction must be express or very clearly implied from the terms of the statute.

We begin, however, with a brief discussion of nonmodifiable alimony and why the General Assembly singled this issue out to require the parties "agree in writing" and the agreement be "properly approved by the court" before the family court is deprived of the authority to modify alimony. § 20-3-130(G). We believe the facts of this case illustrate the point well. When Frank and Kathy divorced in 2003 after a thirty-one-year marriage, Frank had what he later testified was a "good-paying job" making "probably . . . close to $1000 a week." At that salary, he could readily afford the $650 in monthly periodic alimony he agreed to pay to Kathy. In 2016, however, Frank was beginning to have health problems and decided to retire. As a result, his gross income fell essentially in half that year to $25,732. At that salary, Frank struggled to remain current on his alimony. As his financial, health, and other problems continued to mount, Frank's income fell even farther to the point where Kathy's income actually exceeded his.

Frank's decline is one of the many ways the financial welfare of parties to a divorce may change dramatically over the years. As happened to Frank, these changes often make it virtually impossible for a spouse to continue making the agreed-upon payments. Because these changes are generally difficult to anticipate years in advance when the agreement seems like such a good deal, the General Assembly sought to ensure that agreements to foreclose a change in alimony would be thoroughly contemplated, and it required these agreements be documented "in writing" and "approved by the court." However, we wish to make it clear that when the parties to a "nonmodifiable" alimony agreement comply with the requirements of subsection 20-3-130(G), the courts will enforce the agreement and may not modify alimony.[4]

We turn now to the particular history of this case to explain the reasons we find the family court did not err in terminating alimony. While the 2003 order provided alimony was "nonmodifiable," Kathy did not plead this as a defense when Frank requested modification in 2010 and the family court granted it in 2011. The 2011 order did not provide the alimony award was nonmodifiable. Kathy decided not to

---

[4] Our experience teaches us, however, that many will still fall into the trap of having agreed never to modify an alimony payment they eventually become unable to make. We recognize that when this situation arises, as a practical matter, the party will simply be unable to make the payments. For this reason, family courts have historically reduced the unpaid alimony obligations to a civil judgment in favor of the supported spouse.

appeal the 2011 order, and when it became final it became the controlling order awarding alimony. We stress that if Kathy had raised the nonmodifiable issue in 2010 or 2011, and if the family court found their agreement complied with the requirements of subsection 20-3-130(G), then the family court would absolutely have been obligated to enforce the agreement and refuse to modify the alimony award in 2011. Similarly, if the 2003 agreement and order remained in effect in 2016, or if the parties agreed to include a "nonmodifiable" provision in the 2011 order that complied with subsection 20-3-130(G),[5] such an agreement would have foreclosed the family court's termination of alimony in 2018.

The 2011 order, however, says nothing of alimony being nonmodifiable. In effect, Kathy waived her right to claim the alimony was not modifiable, and thus the family court could later modify or terminate it in 2018. A party claiming alimony is nonmodifiable pursuant to subsection 20-3-130(G) of the South Carolina Code must assert that substantive right or risk losing it.

## IV.  Conclusion

While our prior cases did not properly describe the subject matter jurisdiction of the family court, we correct those errors today and reverse the court of appeals' decision to vacate the 2018 order. We affirm in result the court of appeals' determination that the 2011 order was valid.

**REVERSED IN PART.**

**KITTREDGE, JAMES and HILL, JJ., concur.  BEATTY, C.J., concurring in part and dissenting in part in a separate opinion.**

---

[5] The Chief Justice raises a concern we hold is unfounded. If an alimony recipient "recognize[s] temporary financial distress" of the former spouse paying alimony and wishes to accommodate that difficulty by "considering benevolence under the circumstances" and agreeing to a temporary or one-time reduction in alimony, the recipient may agree to do so on the condition that the reduced award itself is nonmodifiable. If that agreement complies with subsection 20-3-130(G), the family court will be obligated to enforce it.

**CHIEF JUSTICE BEATTY:** I concur in part and dissent in part. I concur in the majority's decision as it relates to the clarification of subject matter jurisdiction of the family court. However, I part company with the majority opinion where it concludes that wife waived her right to contest the second modification of an agreed-upon, nonmodifiable alimony award. While I agree with the majority that wife cannot now come back and contest the first modification, I am unpersuaded by the majority's reasoning that since wife did not contest the first modification she waived her right to contest the second modification. The majority bases its conclusion on the fact that the first modification order "says nothing of alimony being nonmodifiable." This reasoning, absent citation to authority, rings hollow and appears unnecessarily outcome focused.

In my view, the majority's reasoning will deter future alimony recipients, who recognize temporary financial distress of alimony payers, from considering benevolence under the circumstances. This decision will lead to unnecessary protracted litigation.